# HENRY H. WOOD

*vs.*

# STANDARD WHOLESALE PHOSPHATE COMPANY.

*Broker's Commissions—Sale of Merchandise.*

A broker who negotiated a sale of several thousand tons of acid phosphate, with an agreement for commissions to be paid him of a named sum per ton, *held* entitled to recover commissions, not on the full amount contracted for, but only on that actually shipped or delivered, the evidence showing that this was in accord with the intention of the parties.

*Decided March 22nd, 1922.*

Appeal from the Superior Court of Baltimore City (GOR-TER, J.).

Action by Henry H. Wood against the Standard Whole-sale Phosphate Company, also doing business under the name of the Standard Guano Company. From a judgment for de-fendant, plaintiff appeals. Affirmed.

*G. W. S. Musgrave,* for the appellant.

*Philip S. Ball,* for the appellee.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is a suit for broker's commission upon a sale of acid phosphate. The foundation for it arose from two contracts; the first, dated October 23rd, 1916, and the second, Novem-ber 1st, 1916. The first contract was as follows:

"Baltimore, Maryland, October 23rd, 1916.
"Sold to Messrs. Hollingshurst & Company, Inc., of
London, England, and New York, for account of
Standard Wholesale Phosphate Company of
Baltimore, Maryland:
"Quantity and Guarantee.

"Twelve thousand (12,000) tons of acid phosphate made from restored acid, to be in good mechanical condition, milled and screened, analysis guaranteed 16% available phosphoric acid.

"Price.

"Nine dollars and seventy-five cents ($9.75) per ton of 2,000 pounds, delivered to vessel, less 1%, at seller's works, Baltimore, in bulk.

"Shipment.

"As called for by buyers, two thousand (2,000) to three thousand (3,000) tons each, November to March, both inclusive, reasonable notice to be given sellers.

"Analysis.

"By Wiley & Company or Gascoyne & Company, Baltimore, from samples drawn in duplicate at time of shipment, cost of same to be at buyer's expense if guarantee is sustained, otherwise at sellers' expense, and pro rata deduction to be allowed for any deficiency. No charge for excess.

"Weights.

"Goods to be billed on sworn certificate. Buyers to have the option of having a representative present to check weights and see that samples are properly drawn.

"Settlement.

"Payment for each shipment by sight draft with weight, analysis certificate and mate's receipt attached. Payment to be made in Baltimore, or Baltimore funds, at Alexander Brown & Sons.

"Commission, 10 cents per ton to Henry H. Wood, broker.

"It is mutually agreed and understood by both sellers and buyers that the above contract is made subject to suspension in case of fire or other unavoidable accidents to the machinery or works of the producers or users of the material, or any other interference by which they are prevented from producing or using the material; otherwise to be carried out in good faith.

·"Executed in duplicate, buyers and sellers each furnished with a copy of this Sale Note.

"Standard Wholesale Phosphate Co.,

"Accepted.

"Accepted: George A. Whiting, Prest.

"Cost of test to be paid by sellers.

"G. A. W."

The second contract was identical in terms except that it was for "One cargo of two thousand (2,000) to three thousand (3,000) tons" instead of twelve thousand (12,000) tons as mentioned in the first contract, at a price of ten dollars ($10) per ton instead of $9.75 per ton specified in the first contract.

As against this first contract the following shipments were made: Per S/S Hercules, 5,521.890 tons; per S/S Thalia, 1,703.190 tons; and per S/S Uranus, 1,588.190 tons, making in all 8,813.270 tons.

On the commission to the plaintiff, as broker, there has been paid to Mr. Wood the sum of $881.26, leaving a small balance unpaid so far as the first contract is concerned. For some reason or other there were no further shipments or deliveries made than the three mentioned, and this suit has been brought by Mr. Wood to recover the small balance under the first contract, and $300 claimed to be due under the second contract.

The case was tried before the Judge of the Superior Court of Baltimore City, sitting as a jury. The only evidence given was on behalf of the plaintiff, and upon that evidence the court granted a prayer directing a verdict for the defendant. Judgment was entered accordingly, from which judgment the present appeal was taken.

There are but two questions in the case, both of them questions of law. The first is as to the right of the plaintiff to full commission under the contract of October 23rd, where but a partial delivery was made; and the second, whether

the plaintiff is entitled to any commission whatever under the terms of the contract of November 1st.

Reference was made in the arguments to article 2, section 17 of the Code. The applicability of that section is very remote, if any, as the section mentioned deals only with commissions in connection with the sale of real estate, and in both of these contracts there was no real estate involved. The law applicable to a case like the present is clearly stated in 9 *Corpus Juris,* 591, as follows: "A broker employed to find a purchaser or vendor ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale although without any fault on the part of the broker the contract is never carried out, unless there is a stipulation, expressed or implied, making his right to compensation depend on the performance of the contract."

Nearly all of the cases dealing with broker's commissions in Maryland have been cases where a commission was claimed on a sale of real estate. In the case of *North Avenue Casino* v. *Ferguson,* 130 Md. 376, the suit was for commissions upon the sale of leasehold property and chattels, but the opinion deals solely with the leasehold property. In the case of *McGavock* v. *Woodlief,* 20 How. (U. S.) 221, cited by counsel and frequently quoted with approval in other cases in Maryland, the question of commissions arose with regard to a sale of real estate and slaves, but in neither of these does the opinion deal with anything but the real estate, there being no distinction made apparently between real estate and chattels.

There have been many cases in Maryland dealing with commissions of real estate brokers, such as *Bethlehem Steel Company* v. *Dornburg,* 135 Md. 125; *Stokes* v. *Wolf,* 137 Md. 393; *Attrill* v. *Patterson,* 58 Md. 226; *Kimberly* v. *Henderson,* 29 Md. 512; *Leviness* v. *Kaplan,* 99 Md. 687; *Glenn* v. *Davidson,* 37 Md. 365 (though the real turning point in that case was as to a custom prevailing among real estate brokers); *Riggs* v. *Turnbull,* 105 Md. 135, in which a very careful opinion by JUDGE PEARCE fully reviews the authori-

ties and follows the same general rule; and others, where the rule as laid down in 9 *Corpus Juris,* 591, is fully approved and given effect, and the same was true in *Parker* v. *Powers,* 127 Md. 598, in the case of commissions for procuring a loan.

With regard to the second contract, where no deliveries were made under or in accordance with its terms, there is somewhat of a difference arising from the fact that it was not, like the first contract, for a definite number of tons, but gave the vendee the right to call for two or three thousand tons as it should see fit. No call was made by the vendee, so far as the record discloses, after the shipment made by the "Uranus," nor is there any reason at all assigned why no delivery was called for, the matter being thus left entirely open to speculation, and in that condition this case falls directly in line with the case of *Riggs* v. *Turnbull,* 105 Md. 135. In addition to this is the further consideration of the course of dealings of the parties to the case, by which Mr. Wood, as broker, was paid and accepted his commission upon each of the three shipments actually made. And even if the strict rule as to the time when a broker becomes entitled to his commissions is applied, the parties have by their course of action modified that rule and are bound by their acts. It is true that the broker had found a purchaser for the vendor and that the failure to fully carry out both contracts is in no way attributable to the broker, but the fact remains that notwithstanding this it seems from the very inception of the contract to have been intended, relied upon and actually carried out, that the broker should receive his commissions when the shipments were made and only as they were made, and in this attitude of the case no error can be ascribed to the trial court for its ruling upon the prayer. The judgment appealed from will accordingly be affirmed.

*Judgment affirmed, costs to be paid by the appellant.*