## BURRELL *v.* FRISBY

[No. 35, October Term, 1956.]

182

*Decided February 6, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Milton B. Allen* and *George L. Russell, Jr.,* with whom were *Brown, Allen & Watts* on the brief, for appellant.

*Donald H. Dashiell,* with whom was *H. Chester Goudy* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy between two real estate brokers with regard to one-half of a broker's commission for the sale of a church. The disputed commission was paid into court in an interpleader proceeding filed by the attorney who had been employed by the owner to sell the church property. The court ordered the disputed amount to be paid to the appellee, and the other broker has appealed from that order.

Both the appellant, James J. Burrell, and the appellee, J. Arnett Frisby, are licensed real estate brokers in the City of Baltimore. In May, 1954, the appellant's agent, Pratheaus C. Land, noticed a "For Sale" sign on the church building belonging to the Central Summerfield Methodist Church (referred to below as the "Central Church"), located on Poplar Grove Street, in the City of Baltimore, which read: "H. B. Rollins, Attorney or your broker". H. B. Rollins, an attorney at law, was the authorized exclusive agent of the Central Church handling the sale of its church property. Land got in touch

with Rollins, who agreed to split the commission with Land if the latter should procure a purchaser who was not already interested in the purchase of the church. The appellant showed the property to representatives of another church (referred to below as the "Rehoboth Church"), the purchaser, but which, at that time, did not wish to buy the property. About two months later, Charles A. Reid, the agent of the appellee, observed the same "For Sale" sign and got in touch with an officer of the Central Church in order to show the property to his prospective buyer. This buyer was the same Rehoboth Church which had been shown the church by Land. As a direct result of the efforts of Reid and the appellee, a sale was consummated. The Chancellor found in substance that the "For Sale" sign created an implied offer to pay one-half of the commission to any broker who was the procuring cause of the sale and that the appellee was the procuring cause of the sale.

The appellee filed a motion to dismiss the appeal because the appellant did not comply with the Rules of this Court in regard to the preparation of his brief and the printed record extract. The irregularities complained of do not appear to have prejudiced the appellee. We, therefore, overrule the motion and will turn to the merits of the case.

The appellant contends: (1) that the lower court should have granted his motions for Summary Judgment; (2) that the "For Sale" sign did not create an implied offer or contract of employment between Rollins and the appellee; (3) that since the appellee was not employed, the fact that he was the procuring cause of the sale is not of itself sufficient to entitle him to a commission.

1. *Motions for Summary Judgment.* In response to the bill of interpleader filed by Rollins, the appellant filed an answer and the appellee filed a demurrer. About two months later the appellee filed a motion for hearing on the demurrer. Some five months thereafter but before any hearing on the demurrer (and apparently none was ever held), the appellant filed a motion for summary judgment. An order *nisi* was entered thereon. Quite promptly thereafter the appellee filed an answer to the original bill and an answer to the motion

for summary judgment in which he recited (seemingly erroneously) that his demurrer had been overruled and stated that he had fully answered the bill and had set forth the nature and extent of his claim to the commissions and that the matter was at issue and ready for hearing. A hearing was held on the motion a few days later and it was denied. In view of the conflicting claims then presented by the respective answers of Burrell, the appellant, and of Frisby, the appellee, we think that the motion was properly overruled. We agree with the appellant that the mere filing of an answer would not necessarily be fatal to a motion for summary judgment, but we think that the claim asserted in Frisby's answer did warrant a finding that there was a genuine conflict between the parties. We are also of the opinion that there was no error in denying Burrell's subsequent motion for summary judgment which rested upon substantially the same ground as the first. See our former *General Rules of Practice and Procedure,* Pt. Two, IV, Rules 1-5, now incorporated in the present *Maryland Rules,* Rule 610; *Kerner v. Eastern Dispensary & Casualty Hospital,* 210 Md. 375, 123 A. 2d 333; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563, and cases there cited.

2. *Contract between Exclusive Agent and Broker Effecting Sale.* After Reid, the agent of the appellee, saw the "For Sale" sign he endeavored to call Rollins but was not successful as Rollins was not in town. He then proceeded to contact one of the officers of the Central Church (the seller) and made the necessary arrangements for showing the property. Two days after the appellee's showing of the premises Rollins called Reid on the phone relative to the prospective sale and the payment of commissions, and Reid referred Rollins to his employer, the appellee. The appellee wrote to Rollins prior to the completion of the sale stating that if the sale was made that he would be entitled to a full commission as allowed by the Real Estate Board of Baltimore City. Rollins wrote back that the appellee would only get 50% of the commission. This was the same position taken by Rollins in a phone call to the appellee, and after obtaining legal ad-

vice the appellee decided that he would only be entitled to one-half the commission.

*Bowie v. Martin,* 199 Md. 58, 85 A. 2d 786, though involving a longer total time interval and not fully on all fours with the present case, is very similar. In that case, the property was first shown to the ultimate purchaser by the first broker (like the appellant in the instant case), who unsuccessfully attempted to make a sale of the property. (He had an office association of some sort with the exclusive agent, but evidently was not an agent or employee of the latter.) Some time later (just how long after the last unsuccessful efforts of the first broker is not clear) the second broker (like the present appellee) showed the same property to the ultimate purchaser, and as a result of his efforts a sale was effected. The exclusive broker handling the property (whose position corresponded to that of Rollins in the present case) paid one-half of his commissions to the first broker and the second broker brought suit against the exclusive broker. The second broker was found to be the procuring cause and recovered judgment, which was affirmed. The agreement between the exclusive broker and the second broker was that the second broker might sell the property and that if he did, they would split the commission fifty-fifty. This Court took the view that the case was governed by the same legal principles as if the exclusive broker were the owner instead of a broker or agent.

Following the same reasoning in the present case, we must agree with the Chancellor below that there was a contract between Rollins and the appellee to the same effect as that in the *Bowie Case.* In his opinion the Chancellor said: "When it comes to the sign that was posted on the church property, that was an agreement ["agreement" being used, we think, as meaning an "offer"] to share the commissions with any broker who was the procuring cause of a sale. The sign reads 'H. B. Rollins, Attorney or your broker.' If some purchaser had come direct to Mr. Rollins of course, the entire commissions were to be paid Mr. Rollins. Mr. Rollins put up the sign and he had authority to represent the church completely in the matter; in effect, he offered to pay part of the commis-

sions to any broker who brought a purchaser and who was the procuring cause of a sale. That sign, in my opinion, had the same legal implication as Mr. Rollins' telephone conversation with Mr. Land. It has been stipulated that if Mr. Rollins were present he would testify that he said he would pay one-half commission to anyone who procured a purchaser."

We think that the testimony was sufficient to support the conclusion of the Chancellor that the sale was effected by the appellee as the procuring cause thereof, and that by so effecting it he rendered the service or performance invited by the implied offer made by the exclusive agent through the sign, and later confirmed by telephone and by letter, and that a binding contract of employment was thereby effected between them under which the appellee became entitled to one-half of the commission on the sale. See *Keener v. Harrod,* 2 Md. 63; *Hill v. Iglehart,* 145 Md. 537, 125 A. 843; *Baliles v. Bryant,* 207 Md. 332, 114 A. 2d 601; *Steele v. Seth,* 211 Md. 323, 127 A. 2d 388. Cf. *Snedker v. Baltimore Brick Co.,* 198 Md. 499, 84 A. 2d 868.

In view of the above holding, it becomes unnecessary to consider the appellant's third complaint.

In accordance with the above views the judgment will be affirmed.

*Judgment affirmed, with costs.*