## FREISHTAT *v.* CALLOW and BELTWAY-PENN CONSTRUCTION COMPANY, INC.

[No. 62, September Term, 1969.]

*Decided February 4, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*David Freishtat* in proper person.

*Thomas P. Smith,* with whom were *Karl G. Feissner* and *Feissner, Kaplan & Smith* on the brief for Charles Callow, one of the appellees. No brief filed on behalf of other appellee.

DIGGES, J., delivered the opinion of the Court.

This case originated in the Superior Court of Baltimore City. David Freishtat, plaintiff-appellant, claimed a mortgage broker's commission of $14,000 alleging he was the procuring cause of a $1,400,000 mortgage loan made to defendant corporation, Beltway Penn Construction Co., Inc. (Beltway). The same criteria to entitle a real estate broker to commissions as the procuring cause is applicable in determining whether a mortgage broker has earned agreed upon commissions. *Bregel v. Cooper,* 161 Md. 416, 157 A. 719 (1931). Judge Grady, sitting

without a jury, determined the facts in the case adverse to appellant's contentions. Freishtat, a lawyer, acknowledges that in order to obtain a reversal he will have to demonstrate that the trial judge was clearly erroneous in his findings of fact. Maryland Rule 886.

In 1964 defendants Charles Callow and Francis Gaegler, also a lawyer, were joint venturers in obtaining several small parcels of land located in the immediate vicinity of Ramp D at the intersection of Pennsylvania Avenue and the Capitol Beltway, Prince George's County, Maryland. Desiring financing for the project, they contacted Lawrence L. Mays who in turn introduced them to Freishtat. The testimony is in conflict as to the details of the conversation at this introductory meeting at Freishtat's office. Callow and Gaegler testified they desired a loan on only two of the tracts, Armstrong and Sansbury, in order to consummate purchase of them. Contrary to this statement Freishtat testified the two owners desired a mortgage of $1,200,000 on all their holdings located near Ramp D in order to fulfill several contracts, exercise options to purchase, and refinance at more favorable terms money borrowed for prior land purchases.

On May 28, 1964 Callow and Gaegler sent a letter to Freishtat reading:

> "Please consider this letter authority for Mr. Larry Mays and yourself to negotiate a loan on all properties of 'Ramp D' located at Westphalia Road, Pennsylvania Avenue and the Capitol Beltway, in the Spauldings District, Prince George's County, Maryland.
>
> "We hereby agree to pay to David Freishtat and Larry Mays one (1%) of the face value of the mortgage loan. The aforementioned fee will be due and payable at the time of settlement."

Following this meeting Freishtat contacted a lending institution, Merchants Mortgage Company through its vice president, Ralph Lubow. On July 31, 1964 a loan of

$400,000 was arranged to Beltway, secured by a mortgage on the Armstrong and Sansbury tracts, and personally guaranteed by Callow and Gaegler. Prior to this loan Beltway was organized with Callow and Gaegler as sole stockholders. The testimony was that the corporation was formed so that an interest rate in excess of the rate permitted by the usury laws applicable to individuals, could be paid to the lender. There was no dispute that as a result of this loan Freishtat was paid $4,000 in accordance with the terms of the letter. Defendants contended that all existing agreements were terminated with this payment.

On October 14, 1965 Callow wrote Mays a letter to "authorize and employ Lawrence L. Mays to obtain for me a First Trust loan on the Forty Four (44) acres of land located on the Beltway & Pennsylvania Avenue intersection. I will accept the loan if terms and condition are acceptable.

"This authorization is valid until I notify him in writing." Callow cancelled this agreement by written notice to Mays dated November 1, 1965.

When Freishtat learned that on February 9, 1966, Beltway had secured a mortgage loan of an additional $1,400,000 from Merchants, he claimed a one per cent commission ($14,000) in accordance with the agreement and authorization of May 28, 1964, contending that the new loan resulted from his continuing efforts on behalf of the defendants and their corporation, Beltway. The present suit resulted from the failure of appellees to pay.[1]

There was a trial of a full day with much conflicting testimony. Appellant does not claim the trial judge erred in his understanding of the relevant law, but that his findings of fact under that law are so contrary to reasonable inferences as to be "clearly erroneous." What we regard as a complete answer to this assertion is provided

---

1. Gaegler had conveyed his interest in Beltway prior to the $1,400,000 loan, and had no connection with that transaction. A directed verdict was granted as to him which is not questioned on appeal.

by reference to the trial judge's opinion, where he carefully reviews the disputed points, and notes the evidence supporting the position of each party. We quote Judge Grady:

"On the issue of whether Freishtat and Mays had continuing authority to act for the defendants after the loan of July 31, 1964, it is significant that in October, 1965, Callow gave Mays written authorization to act for him in securing the loan on the entire tract of 44 acres. This authorization to Mays was cancelled by Callow in a letter dated November 1, 1965. Mays did not appear as a witness in this case, so that the Court has no way of ascertaining his interpretation of this development. However, if Mays and Callow, in October, 1965, believed that Mays and Freishtat had continuing authority under the letter of May 28, 1964, then any additional authority to Mays would have been superfluous. Since the conclusion is inescapable that Freishtat and Mays were joint adventurers, if Freishtat's authority was a continuing one, Mays' authority was also a continuing one. The Court also is impressed with Callow's testimony that while he cancelled Mays' authorization of October 14, 1965, he saw no reason to cancel the joint authorization of Freishtat and Mays under the letter of May 28, 1964, since this agreement was fully performed upon the securing of the loan for $400,000 and the payment of $4,000 to Freishtat and Mays. The Court is not unmindful of the fact that the authorization in the letter of May 28, 1964, was not limited as to time. However, based on all of the evidence, the Court finds as a fact that the plaintiff's authority to act for the defendants was limited to obtaining financing only on the Armstrong and Sansbury properties at 'Ramp D' for which a

loan of $400,000 was made and for which the plaintiff and Mays received their commission. The Court further finds that since Freishtat and Mays were joint adventurers in this undertaking, the cancellation of the authority of the one joint adventurer, Mays, on November 1, 1965, cancelled the joint undertaking in its entirety.

"Another important question in dispute is whether or not the plaintiff was the proximate and procuring cause of the loan of $1,400,000 of February 9, 1966. The plaintiff and the representative of Merchants Mortgage testified that following the $400,000 loan of July 31, 1964, the plaintiff continued his efforts to secure the larger loan which was consummated February 9, 1966. There is no written documentation of what these efforts consisted of. On the other hand, the defendant Callow testified that after July, 1964, he had no further contact with the plaintiff until he received the plaintiff's demand for a commission of $14,000 after February 9, 1966. The evidence is uncontradicted that the negotiations for the loan of one million, four hundred thousand dollars were conducted with Merchants Mortgage by Callow and other officers of Beltway without any direct participation by either Mays or Freishtat and that very substantial fees were paid by Beltway to two other brokers.

"After careful consideration, the evidence fails to persuade the Court that the plaintiff has established by a preponderance of the evidence that he was the proximate and procuring cause of the $1,400,000 loan made to Beltway on February 9, 1966."

We have here a typical situation where the trial judge is required to determine what testimony he believes and we in reviewing his findings of fact should give due regard to him "to judge of the credibility of the witnesses." *Taylor*

570

*v. Freeman,* 186 Md. 474, 478, 47 A. 2d 500 (1946). As we have said on many occasions, if there is substantial evidence to support the trial court's factual conclusion, that finding must be reviewed in the light most favorable to the party who prevails below. *Space Aero v. Darling,* 238 Md. 93, 106, 208 A. 2d 74, *cert. den.* 382 U. S. 843 (1965). In this case appellant has not demonstrated Judge Grady to be clearly wrong in his determination of the facts, as there is substantial testimony to underpin his conclusions. Rule 886. *Hamilton v. Smith,* 242 Md. 599, 219 A. 2d 783 (1966).

*Judgment affirmed. Costs to be paid by appellant.*