### RHODERICK *v.* ROY HANSEN MORT-GAGE COMPANY, INC.

[No. 159, September Term, 1970.]

*Decided December 14, 1970.*

---

130

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*William R. Leckemby, Jr.,* for appellant.

*W. Jerome Offutt,* with whom was *Arthur J. Campbell, Jr.,* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In September 1968 the appellant (Rhoderick), a Frederick County builder, went to see the appellee (Hansen),[1] an Arlington (Va.) mortgage broker. He told Hansen he needed some money and that he had "about $85,000 worth of deferred purchase notes, some first [mortgages] and some second mortgages." Hansen said Rhoderick "took * * * [Hansen's] forms with him and put down in complete detail exactly what * * * [Hansen] needed to know in order to evaluate how much he could borrow against them." Hansen submitted Rhoderick's application to Thomas Offutt, a fellow citizen with money to lend. Offutt expressed interest. Hansen then telephoned Rhoderick and told him Offutt might loan "50 or 60% of the face

---

1. At the time of trial Hansen said he did business as an individual but that in September 1968 he "was incorporated."

value of the notes" to Leisure Village, Inc., a corporation owned by Rhoderick. He also told him the interest rate would be 16% and approximately what the other expenses would be. Rhoderick said he was "interested." Subsequently Hansen and Offutt met Rhoderick in Frederick. After he showed them the mortgaged properties Hansen said he would advise him as soon as possible of Offutt's final decision. On 5 November 1968 Hansen sent Rhoderick the following letter:

> "I am pleased to advise you that your recent application for a loan has been approved on the following terms and conditions: Leisure Village, Inc. will execute a promissory note in the face amount of $41,000, bearing 16% interest, payable in full on or before two years from inception. Leisure Village will also assign all right, title and interest in a package of 18 deferred purchase notes, having an unpaid balance as of October 25 of approximately $82,424 with a monthly cash flow of approximately $748.00. The terms of the contract to repurchase the notes will allow for any additional payments to be made to the $41,000 debt in addition to the payments received from the notes on an amortizing basis. Settlement will be held at the office of Mr. W. J. Offutt in Frederick. From the $41,000 you will pay a loan fee to this office of $2050.00 and *all legal expenses attendant in the transaction.* [Emphasis added.] Kindly return your approval of this matter to me.
>
> /s/ Roy O. Hansen
>
> "Seen and approved
>
> Harry Rhoderick"

Rhoderick signed the letter above his typewritten name and returned it to Hansen. According to Hansen, Rhoderick telephoned him shortly thereafter and said, "Let's get on with this and get it settled." Hansen testified he

explained to Rhoderick and to Mr. Leckemby, Rhoderick's attorney, that "proper endorsements" of the notes and a rundown of the titles to the mortgages would be required and that Offutt was willing to accept Leckemby's certificate that everything was in order. As indicated in the letter of 5 November, Offutt had arranged for W. J. Offutt, Esq. (no relation), a Frederick attorney, to represent him in the transaction. On 13 December Hansen sent the following letter to Rhoderick:

"Mr. W. Jerome Offutt tells me today that he has been advised by your attorney, William Leckemby, that you intend to break your contract with me for a loan recently applied for and approved. In my last conversation with you on December 5, you told me you had all intentions of proceeding with the loan, but that the imposition of having a complete title search on each note had slowed down the transaction. You further implied that your attorney was going to try to 'work something out' with Mr. Offutt and that you would get in touch with me. At this point your statement does not agree with the facts. Mr. Offutt denies that he ever instructed Mr. Leckemby to make a complete title search on each note, furthermore neither I nor my lender ever imposed such a requirement on Mr. Offutt [Rhoderick]. It is common practice in loans of this type to have a simple run down of the title on each note and a certificate issued by a competent attorney indicating that the note or notes is a valid 1st or 2nd trust as the case may be. Assuming that a complete title search on each note had been required in no way abrogates the contractual agreement that you agreed to. The essence of our contract was that you would put up certain collateral, properly qualified as to validity and receive a loan for same on terms and conditions agreed to by you.

"At this point Mr. Rhoderick I am convinced that you have used my commitment to shop this loan elsewhere to a better advantage to yourself and that you are trying to use the excuse that the complete title search was the deterring factor in bringing this transaction to fruition. If I am wrong in this presumption, then I will expect you to live up to our contract and close this matter immediately. Otherwise be on notice I will expect from you my earned commission of $2050 plus interest to my lender on the $41,000 he has set aside for your use since November 5, plus a reasonable fee to Mr. W. J. Offutt for his services.

"If I do not hear from you within 5 days of this date, I will put this matter in the hands of Mr. [W. Jerome] Offutt to take legal action against [you].

Sincerely yours,
/s/ Roy O. Hansen

CC: W. J. Offutt
Wm. Leckemby"

Hansen filed a suit against Rhoderick and Leisure Village, Inc., in the Circuit Court for Frederick County in January 1969. The case came on for trial before Barrick, J., without a jury, on 3 April 1970. On 23 April 1970 Judge Barrick entered a judgment for $2,050 in favor of Hansen and against Rhoderick. At the same time he filed a memorandum giving the reasons for his decision. Excerpts from his memorandum follow:

"Hansen testified that Rhoderick approached him about securing a loan and that he did arrange with Thomas J. Offutt to make a loan in the amount of $41,000 to be secured by a package of first and second trusts (mortgages) owned by Rhoderick and wife as trustees. Mr. Offutt testified that he did make a commitment to Hansen that he would make a loan in the

amount of $41,000 in accordance with the agreement introduced as Exhibit A and produced a bank statement to the effect that he had ample money in the bank to make such a loan.

"The plaintiff has produced sufficient testimony to establish by a preponderance of the evidence that Rhoderick did in fact negotiate a loan with Hansen and that Hansen did obtain a commitment for the loan and thereby earned the agreed commissions of $2,050. It appeared to the court that even the defendant Rhoderick did not contest this fact too strenuously.

"The main contention is the liability of Leisure Village, Inc. for the commission.

"All the testimony and exhibits seem to indicate to the court that negotiations by both Hansen and Offutt were with Rhoderick as an individual. There was mention that the loan would be made to Leisure Village but nowhere in the testimony was there any indication that the parties intended that Leisure Village be primarily responsible for repaying the loan or liable for any commissions due as the result of making this loan. The agreement was signed by Rhoderick as an individual and not in his capacity as an officer of Leisure Village. The agreement was addressed to him and it states 'you will pay a loan fee to this office of $2050.' Deeds of trust owned by Rhoderick and his wife were to be security for the loan. Everything points to negotiations with him as an individual.

\* \* \*

"The court therefore finds that Rhoderick did in fact negotiate this loan; that the loan commitment was made; that the commission was earned; that Rhoderick is liable for the commission and that although the loan was to be made to Leisure Village, Inc., Leisure Village is not liable for the commissions."

The rule of law which we think controls the case at bar was stated clearly and succinctly in *Bregel v. Cooper*, 161 Md. 416, 420 (1931). Judge Sloan (later Chief Judge), writing in that case for the Court, said:

> "These [*Stokes v. Wolf*, 137 Md. 393, 112 A. 566; *Warshawsky v. Traub*, 156 Md. 597, 603, 144 A. 833, and cases there cited] are cases of sales of real estate, but 'the rights and duties of a broker employed to secure a loan depend in general upon the same principles which govern the broker who undertakes to find a purchaser of property. The loan broker is entitled to his commissions where he has procured a lender who is ready, willing and able to lend the money on the terms proposed.' 2 *Mechem on Agency* (2d Ed.), sec. 2467."

Quite recently, in *Freishtat v. Callow*, 256 Md. 564, 565 (1970), we cited *Bregel* with approval. Rhoderick, in his brief, has directed our attention to cases he claims should be persuasive but our examination of them satisfies us that they neither attenuate the rule announced in *Bregel* nor engraft upon it anything peculiarly relevant to the instant case making it inapplicable.

Rhoderick presents one contention we think calls for comment. He says Hansen imposed certain conditions which were not a part of the agreement. He lists only one, however, and that is "the requirement for a title rundown and [a] certification of title from * * * [Rhoderick's] attorney." This, he says, "had the effect of slowing down the transaction, actually causing it to grind to a halt, substantially and impermissibly var[ying] the terms of the agreement." It will be recalled that the agreement required Rhoderick to pay "all legal expenses attendant in the transaction." We doubt there was meant by this language little except the cost of examining the land records to see if Rhoderick's equities in the mortgages were unimpaired. It is unlikely that this requirement came as a surprise to Rhoderick. In fact, Hansen

testified he "had several conversations with * * * [Mr. Leckemby] regarding" the title certifications and that he had asked him (Leckemby) to furnish them. After that, Hansen said, he and Offutt "were just waiting for those various documents to be presented." Rhoderick testified that he "would never have spoken to anybody else after the first of the year if there was any way * * * [he] could * * * [have gotten] this loan" from Offutt. Yet it was his own attorney's failure or refusal to extend the titles to the ten mortgages offered as security which stymied the closing of the loan. In late January Rhoderick negotiated a loan from a physician in Frederick at a more favorable rate of interest, thus providing some basis for Hansen's conviction that Offutt's commitment was indeed being used to "shop the loan elsewhere."

As Maryland Rule 886 requires, we have given "due regard" to Judge Barrick's "opportunity * * * to judge the credibility of the witnesses" and since we cannot say his judgment on the evidence was clearly erroneous it will not be set aside. And we think his memorandum opinion reflects a proper application of the settled law.

> *Judgment affirmed.*
> *Costs to be paid by the appellant.*