RICKER *v.* ABRAMS t/a Oriole
Realty Company

[No. 73, September Term, 1971.]

*Decided November 16, 1971.*

510

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Milton Talkin,* with whom was *Alan J. Bloom* on the brief, for appellant.

*Sheldon E. Friedman* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is another in the seemingly unending series of squabbles over brokerage commissions, which differs from the usual case only because personalty was the sub-

ject of the sale and Code (1957, 1968 Repl. Vol.) Art. 2, § 17, which sets forth the circumstances under which a real estate broker may be entitled to commissions, in the absence of an agreement to the contrary, is of remote applicability, *Wood v. Standard Wholesale Phosphate Co.*, 140 Md. 654, 657, 118 A. 179 (1922).

In April of 1969, the appellant, Mrs. Helen E. Ricker, a licensed real estate broker, was a co-owner, with her nephew, Richard L. Gary, of a package goods store on Mountain Road in Anne Arundel County, and owned individually the building in which the business was conducted and an adjacent tract of land.

Charles J. Hopkins, a salesman for Oriole Realty Company, who had recently sold a liquor store for a client, Harold Friedberg, knew that Friedberg was thinking of going back in business. In hopes of promoting a sale, Hopkins stopped to see Mrs. Ricker, and ascertained that her business was for sale — for $45,000, according to Mr. Hopkins, or for $50,000, according to Mrs. Ricker. As Hopkins tells it, Mrs. Ricker wanted $40,000 net, and the additional $5,000 was to take care of his commission.[1]

The following day, Hopkins introduced Friedberg to Mrs. Ricker. Hopkins did not participate in the negotiations which ensued between the principals; Hopkins testified that this was at Friedberg's suggestion, and that he acquiesced. On 30 April 1969, a corporation formed by Friedberg agreed to purchase the business for $35,001 subject to certain contingencies, including the transfer of the liquor license, and agreed to lease the premises occupied by the business for $600 per month.[2] The agreement provided that $10,000 of the consideration was to be paid at settlement, the balance of the purchase price to be paid, with interest at 6%, in 36 monthly install-

---

[1]. Mr. Hopkins thought that both goodwill and inventory were included in this price.

[2]. There was testimony that the allocation of this purchase price: goodwill, $30,000; equipment, $5,000; liquor license, $1.00, was that suggested by Mrs. Ricker's accountant. The wholesale cost of inventory was to be added to purchase price.

ments commencing 1 January 1970.[3] Mrs. Ricker, in turn, agreed to give Friedberg's corporation an option to purchase the business premises for $50,000 and an adjoining 2.13 acre parcel for $40,000.

When Oriole Realty discovered, several months later, that settlement had been made, suit was brought against Mrs. Ricker and Friedberg for $5,000, the amount of the commissions allegedly agreed upon. At the end of the case, Friedberg's motion for a directed verdict in his favor was granted, and the case went to the jury only against Mrs. Ricker. From a judgment against her for $5,000, entered on the jury's verdict, Mrs. Ricker has appealed.

If we understand Mrs. Ricker's argument, it is essentially this: she did not employ Oriole Realty as her agent and owes it no commission, and since Friedberg did employ Oriole Realty, his motion for a directed verdict should have been denied. If she did employ Oriole Realty, her position is that it was also acting for Friedberg, and an agent who acts for both seller and buyer without the knowledge and consent of both may be unable to collect commissions from either, relying on *Stokes v. Wolf*, 137 Md. 393, 412, 112 A. 566 (1921); *Blake v. Stump*, 73 Md. 160, 172, 20 A. 788 (1890). The rule has been stated more recently and with greater precision in *Sellner v. Moore*, 251 Md. 391, 399, 247 A. 2d 523 (1968), which recognizes that a broker who breaches a fiduciary duty might forfeit his right to compensation.

Oriole Realty counters with the contention that it had been employed by Mrs. Ricker; had never acted for Friedberg; but if it had acted for Friedberg, it did so with Mrs. Ricker's knowledge and consent; and further, that since Mrs. Ricker never sought to have the jury instructed as to the consequences of a dual agency, she cannot raise that question now, Rule 885, Rule 554 d. and e.

---

3. There is at least a suggestion that the reduction in the sale price was a result of the income tax advantage to be derived from recasting the transaction as an installment rather than a cash sale.

The whole case revolves around disputed issues of fact. Hopkins freely admitted that he had no listing agreement with Mrs. Ricker, but that after she said she would consider selling the store, the conversation went like this:

"* * * I [Hopkins] says, 'what are you asking.' She [Mrs. Ricker] says, 'Well, I don't know.' she says, 'right off-hand what I'd ask for the place.' She says, 'I'll have to think about it' so as the conversation went on, I says, 'You know, I'd have to get a commission out of it for the office.' She says, 'Well,' she says, 'do you think you can get forty thousand dollars?' So I says, 'Well, I think I could.' She says, 'Well, you will have to ask five thousand dollars more because your commission is in there.' So I told her that I would."

Saul Abrams, proprietor of Oriole Realty, and Hopkins categorically denied that Oriole Realty was acting for Friedberg or expected to be paid by him.

Mrs. Ricker says the commission question first came up when she was talking to Hopkins and Friedberg. As she tells it,

"* * * And during the course of conversation and Mr. Friedberg spoke up and said, 'Well, what would you entertain as a figure.' I said, 'I want Fifty Thousand.' He says, 'Well, if I were to give you Forty Thousand would you entertain that idea.' I said, 'I'm busy.' I said, 'I will think it over.' I said, 'I will not, however, list the property nor will I pay any commission or be involved in any commission on the property.' I said, 'I can sell it myself and don't need any assistance from an outside source.' Mr. Hopkins again brought up the question of commission. Mr. Friedberg told him, he says, 'I'll tell you what I'm going to do.' He says, 'and I don't want an answer now.' He says, 'I want you to

think about it.' He says, 'I will give you Thirty Five Thousand for the property and pay full commission to Mr. Hopkins.' Mr. Hopkins says, 'Well, that's all right with me.' He says, 'Well now, let's not take this lady's time up discussing commissions. She's a busy woman. She has things to do. You know I will take care of you. I have done it in the past and I will do it in any other transaction."

Friedberg testified that after he had negotiated a purchase price of $35,001, the first draft of a contract of sale, prepared by his lawyer, provided that his corporation would contribute $1,200 toward commissions, and that Mrs. Ricker would hold it harmless for the payment of any balance. This provision was unacceptable to Mrs. Ricker and was deleted at her insistence. Friedberg's lawyer, who had prepared the contract, said that when Mrs. Ricker wanted the provision removed, Friedberg said, "This is what we're going to do but we've got an agreement between us in this regard and it doesn't have to be in the contract."

Friedberg said that on 8 July 1969 he had sent to Mrs. Ricker for signature a check drawn on their escrow account for $1,200 payable to Oriole Realty. This check was lost and on 31 July 1969 he mailed to Mrs. Ricker his corporation's check for $1,200, drawn, at the suggestion of his counsel, to the order of Mrs. Ricker and Oriole Realty. This check was never cashed.

When asked what had been said about commissions in his conversation with Mrs. Ricker, Friedberg replied:

"Well, in talking with Mrs. Ricker and discussing the price we were haggling, I guess, is the word, and, and reduced the price from Forty Thousand dollars to Thirty-five Thousand dollars. I agreed to pay Twelve Hundred dollars commission or whatever, of whatever part the commission would be, the commission would be Twelve Hundred dollars."

In ruling on Friedberg's motion for a directed verdict, the court below found that there was no evidence that Friedberg had obligated himself to Oriole Realty in any way to pay it a commission. Whatever obligation existed was entirely collateral to the principal issue of Mrs. Ricker's obligation, and arose because of a side agreement between Friedberg and Mrs. Ricker. Since the uncontradicted testimony of Saul Abrams, Hopkins, and Friedberg was that Oriole Realty acted at no time as Friedberg's agent, we agree that Friedberg's motion for a directed verdict was properly granted. This being so, the dual agency point made by Mrs. Ricker on appeal falls of its own weight.

In charging the jury, the court ruled that if there had been a contract between Mrs. Ricker and Oriole Realty, it was express and not implied. On the question whether Mrs. Ricker had employed Oriole Realty, the jury was instructed, in part:

> "* * * Now, in this case the real matter of dispute is whether the defendant, Mrs. Ricker, did or did not employ the plaintiff regarding the sale of the business of the plaintiff, and that is the issue in the case. Whether she employed him or whether she did not employ him. Now, of course, where a broker procures in good faith an acceptable purchaser who enters into a binding and enforceable written contract to buy in terms acceptable to the seller and such contract is accepted by the seller and signed by the seller, which, of course, has been completed and done in this case, the broker shall be deemed to have earned the customary commission, but that is in such case where a broker is employed. Now the burden of proving that a broker was employed is upon the broker claiming the commission. In order to collect a commission he must find that, in this case, the broker was employed by the seller. The burden of proving that is upon the plaintiff, Oriole Realty. Now the mere

fact that an agent introduces a purchaser of property to the seller or discloses a name or names and they come together and complete the transaction would not automatically entitle a plaintiff or a real estate agent to a commission. But this may be considered, together with other evidence in the case, in arriving at your verdict as to whether such employment took place or whether it did not. A broker who has rendered services entitling him to commission cannot be deprived of it merely because a principal completes [the] negotiation of the contract direct with the customer. So a broker is entitled to a commission which he earned by merely producing a customer who ultimately purchased where by introducing the purchaser to the owners, if the parties carried on the negotiation themselves from that particular point on."

Later, the court said:

"Now in this case, as the court viewed the testimony, the Oriole Realty either had an express verbal agreement contract with Mrs. Ricker or it did not have such an agreement. If it did then it is entitled to recover. If it did not, then the verdict should be for the defendant, Mrs. Ricker. * * * And it's either a case of the verdict for the plaintiff for Five Thousand Dollars or the verdict for the defendant for costs against the plaintiff. * * *"

Mrs. Ricker excepted to the latter portion of the charge, suggesting that the jury should also have been instructed that if it found there had been no agreement as to amount, the jury could allow commissions in the amount customarily charged. Since Mrs. Ricker did not raise this point in her brief or in argument before us, we must regard it as having been waived, *Eggert v. Montgomery County Council,* 263 Md. 243, 282 A. 2d 474

(1971); *Wooddy v. Wooddy,* 256 Md. 440, 450-51, 261 A. 2d 486 (1970); *Mullins v. Thorne,* 254 Md. 434, 437, 255 A. 2d 409 (1969). *See* Rule 831 c. 2.

As we see it, the first part of the above instructions fairly summarized the Maryland law. We have held that an oral contract with a broker for the sale of a tavern business is sufficient, *Glaser v. Shostack,* 213 Md. 383, 387, 131 A. 2d 724 (1957); that the burden of proving employment and that he was the procuring cause of the sale is on the broker claiming the commission, *Steele v. Seth,* 211 Md. 323, 328, 127 A. 2d 388 (1956); *Kroh v. Rosenberg,* 158 Md. 273, 279, 148 A. 244 (1930); that a sale negotiated or concluded by the parties without the broker's participation does not necessarily deprive the broker of his right to commissions, *Leimbach v. Nicholson,* 219 Md. 440, 446, 149 A. 2d 411 (1959); *Buchholz v. Gorsuch,* 144 Md. 62, 124 A. 389 (1923); that a broker is entitled to a commission when he produces a purchaser to whom a sale is made by the owner at a lower price, *Leimbach v. Nicholson, supra* at 447; and even that employment may be implied when the owner permits a broker to show the property, *Heslop v. Dieudonne,* 209 Md. 201, 206, 120 A. 2d 669 (1956). While it is true that all of these cases except *Glaser* dealt with a broker's entitlement to commissions in real estate transactions; nevertheless, their teaching is applicable here. The principal thrust of Code Art. 2, § 17 was to settle the question when, in the absence of special agreement, a real estate broker is entitled to commissions, *Sanders v. Devereux,* 231 Md. 224, 231, 189 A. 2d 604 (1963).

We have held that the criteria by which the entitlement of real estate brokers to commissions is determined may be applied to mortgage brokers who are not covered by Art. 2, § 17, *Rhoderick v. Roy Hansen Mort. Co.,* 260 Md. 129, 135, 271 A. 2d 647 (1970); *Freishtat v. Callow,* 256 Md. 564, 565, 261 A. 2d 458 (1970); *Bregel v. Cooper,* 161 Md. 416, 420, 157 A. 719 (1931). We see no reason why the same tests should not be applied in

518

determining whether a broker is the procuring cause of a sale of personal property.

That the jury chose to accept Mr. Hopkins' testimony and reject Mrs. Ricker's was the resolution of a disputed issue of fact, clearly within the jury's province, *Weinberg v. Desser,* 243 Md. 347, 221 A. 2d 66 (1966).

*Judgment affirmed, costs to be paid by appellant.*