**COLDWELL BANKER RESIDENTIAL REAL ESTATE, Plaintiff,**

v.

**O'BRIEN & ASSOCIATES and Long & Foster Real Estate, Inc., Defendants.**

### Civ. No. 90–1577–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 24, 1991.

Freyvogel, William Thomas Adams, Porter & Radigan, Ltd., McLean, Va., for Coldwell Banker Residential Real Estate.

Williams, Geoffrey Thomas, Newlon & Williams, P.C., Fairfax, Va., for O'Brien & Associates, Inc.

Grad, John David, Grad & Logan, P.C., Alexandria, Va., for Christine Morgan.

Roche, Brien Anthony, Johnson & Roche, McLean, Va., for Long & Foster Real Estate, Inc.

### ORDER

ELLIS, District Judge.

In this interpleader action, the claimants to the fund are two real estate brokers who claim entitlement to a $74,000 commission from the sale of a property. At issue is which of these brokers was the selling broker under Maryland law. Before the Court is defendant O'Brien & Associates' ("O'Brien's") Motion for Summary Judgment which is opposed by defendant Long & Foster Real Estate, Inc. ("Long & Foster"). Because the material undisputed facts establish that O'Brien was the selling broker, summary judgment in favor of O'Brien is warranted.

Summary judgment standards are well settled. "A motion for summary judgment must be granted if 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.'" *Davis v. Thoman Motel Corp.*, 900 F.2d 28, 31 (4th Cir.1990), citing Rule 56(c), Fed.R.Civ.P.; *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990); *De Leon v. St. Joseph Hospital, Inc.*, 871 F.2d 1229, 1233 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). "Such a burden may be met by use of 'affidavits, exhibits, depositions, and other discovery materials.'" *Pachaly*, 897 F.2d at 725, quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). The party opposing summary judgment is entitled to have the evidence of record and all reasonable inferences read in its favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Pachaly*, 897 F.2d at 725 n. 3. But, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Id.* at 252, 106 S.Ct. at 2512. When the record evidence in this case and all inferences that could be drawn therefrom are read in the light most favorable to Long & Foster, it is clear that a jury could not reasonably find for Long & Foster and that O'Brien prevails as a matter of law.

The following material facts are of record and undisputed. The Nazareth Literary & Benevolent Institution (the "Institution") desired to sell a property it owned known as St. Mary's Academy located in St. Mary's County, Maryland ("the property"). The Institution hired Previews, Inc. of Washington, D.C. as its "listing broker."

Previews in turn hired Ray Runco Realty to serve as its local representative with regard to the property. In partial fulfillment of its duties as listing broker, Previews prepared and distributed to brokers in 1981 a pamphlet describing the property and the commission that brokers would receive for finding a purchaser and successfully negotiating the offer to a conclusion. The commission was described as follows:

Owner authorizes 5% commission on the first $2,000,000, 2½% on the balance to the duly licensed broker who has negotiated the offer and brought the sale to a successful conclusion. Previews takes no part in this commission.[1]

This pamphlet further informed brokers that inspection of the property was to be "[b]y appointment only, through Previews/Washington." About the owner of the property, the pamphlet gave the following information: "OWNER: c/o Previews, Inc., ... Washington, D.C." Thus, the pamphlet directed all inquiries to Previews rather than to the actual owner of the property.

The property remained on the market for a considerable period of time after 1981. In March 1987, John Quade, a real estate agent working for O'Brien, began discussions concerning the purchase of the property with Casimir Szlendak, a principal of Jackson Realty, Inc. While the parties dispute whether Quade had previously spoken with Szlendak about purchasing the property, and also whether Christine Morgan, a Long & Foster real estate agent, spoke with Szlendak about the property prior to Quade's discussions with Szlendak, this dispute, as it happens, is not material. What is material is the undisputed fact that Quade took part in purchase negotiations among Jackson Realty, Previews and the Institution from March 1987 to February 1988. Long & Foster took no part in these negotiations. On February 16, 1988, the Institution and Jackson Realty executed an "Agreement of Sale." The Agreement identified Previews, Inc. and Quade and O'Brien as the brokers participating in the sale. Moreover, the Agreement included a

1. Previews Listing No. 118150 (O'Brien's Exh.       No. 4).

provision in which the Institution and Jackson Realty warranted that they had not dealt with any brokers besides Previews and Quade, and further agreed to indemnify each other against any harm flowing from a breach of this warranty. Beyond this, Quade, acting on behalf of O'Brien, also executed the Agreement of Sale as the Escrow Agent. Quade and O'Brien acted as Escrow Agent during the following year until all payments due the Institution from Jackson Realty were made. On March 28, 1989, ownership finally passed from the Institution to Jackson Realty. Hence, indisputably established in the record is that for two years prior to the March 1989 transfer of ownership, Quade, representing O'Brien, performed the services of a selling agent. Long & Foster took no part in these negotiations. Furthermore, no evidence has been presented, and no averments made by Long & Foster, that any Long & Foster agent ever listed Szlendak or Jackson Realty with the Institution, Previews, or Ray Runco Realty. Moreover, the Agreement of Sale itself indicated that the seller and buyer viewed Quade as the selling agent and O'Brien as the selling broker.

At the close of negotiations, the Institution paid Previews $74,000 to be used to pay the selling broker. Subsequently, Coldwell Banker Residential Real Estate ("Coldwell") purchased Previews. Coldwell, fearing that conflicting claims to the $74,000 would embroil it in a law suit, interpled the funds at issue (now amounting to approximately $81,000).[2]

It is also undisputed that Christine Morgan, the sister of Szlendak, worked as an O'Brien real estate agent until May 1, 1986. On that date, she became an agent for Long & Foster. In support of Long & Foster's claim to the interpled funds, Morgan avers that in the latter part of 1986, while she was an agent for Long & Foster,

she drove her brother around the St. Mary's Academy property on three occasions and made numerous telephone calls to her brother during which she suggested that he purchase the property. Morgan avers that this activity took place prior to any contact between Quade and her brother concerning the property. Moreover, Long & Foster maintains that Morgan's activity renders it the "procuring broker" under Maryland law and entitles it to the interpled commission funds. Whether Morgan or Quade first introduced Szlendak to the property is disputed. Yet this dispute is not material. Even assuming, *arguendo*, that Morgan was the first agent to introduce Szlendak to the property, Long & Foster is not entitled under Maryland law to the interpled funds.

Maryland provides by statute that a broker may recover a commission from a seller of property even absent an explicit contract provided certain conditions are met:

> In the absence of a special agreement to the contrary, if a real estate broker employed to sell, buy, lease, or otherwise negotiate an estate, or a mortgage or loan secured by the property, procures in good faith a purchaser, vendor, lessor, lessee, mortgagor, mortgagee, borrower, or lender, as the case may be, and the person procured is accepted by the employer and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale, purchase, lease, mortgage, loan, or other contract, as the case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered into is performed, unless the performance of the contract is prevented, hindered, or delayed by any act of the broker.

**2.** In addition to O'Brien and Long & Foster, Coldwell also listed Judith O'Brien & Associates, Inc. and Christine Morgan as defendants in its complaint. Judith O'Brien & Associates did not file an answer to the complaint and has not otherwise participated in this proceeding. The Court dismissed Christine Morgan as a party to this proceeding by Order dated February 15, 1991, finding that she had no direct claim to the funds at issue; rather, her claim to a sales commission, if valid, can only be asserted against O'Brien or Long & Foster in a separate proceeding after the identity of the selling broker is determined.

Maryland Code, Real Property Article § 14–105 (formerly Art. 21, § 14–105 (Md. Code, 1973 Repl.Vol.) and Art. 2, § 17 (Md. Code 1957)).

Maryland courts construing this statute and its predecessors have held that to recover under the statute a broker must make a two-fold showing: the broker "must not only show [1] that he was employed but [2] that he was the procuring cause of the sale." *Steele v. Seth*, 211 Md. 323, 127 A.2d 388, 391 (1956); *see Weinberg v. Desser*, 243 Md. 347, 221 A.2d 66, 70 (1966) (analyzing evidence as to whether the parties had "entered into a contract of employment" and the identity of "the procuring cause of the lease"); *Davis v. Phase I, Limited*, 30 Md.App. 691, 354 A.2d 473, 478 (Md.Ct.Spec.App.1976) ("threshold prerequisite to the application of the statute is an existing agreement between the broker *and his employer*") (emphasis in original). Thus, as Long & Foster concedes, to "establish [its] claim, it must be proved that: 1) Long & Foster was employed by the seller; and 2) Long & Foster was the procuring cause of the sale." [3]

Under Maryland law the existence of a contract of employment may be implied from conduct between a seller and broker tending to show such an agreement and this matter is usually an issue of fact to be determined by a jury:

The law of Maryland has gone far in recognizing that if the broker produces any evidence tending to prove agency, created by the express language of the parties, oral or written, or implied from their conduct, the question of its existence becomes a matter for determination by the jury.

*Knopf v. Mercantile–Safe Deposit & Trust Co.*, 252 Md. 293, 250 A.2d 96, 101 (1969); *accord Weinberg v. Desser*, 221 A.2d at 70. A contract of employment may be implied where an owner gives permission to a broker to show property to a prospective buyer and subsequently the owner sells the property to that buyer.[4] But, as indicated in *Knopf v. Mercantile–Safe Deposit & Trust Co.*, a party must submit at least some evidence tending to prove agency before a jury issue arises. In more general terms, a party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514. Long & Foster's showing falls short of this requirement.

The evidence of record, viewed most favorably to Long & Foster, fails as a matter of law to establish that Long & Foster "was employed" by the Institution or any of its agents (i.e., Previews or Ray Runco Realty) to attempt to sell the property. In support of Long & Foster's opposition to summary judgment, Morgan avers the following:

6. The actual inspection of the property in the latter half of 1986 by Mr. Szlendak and myself consisted of our walking the grounds, and looking through the first floor windows of all three buildings. Mr.

---

**3.** Long & Foster's Memorandum in Opposition to O'Brien's Motion for Summary Judgment at 4.

**4.** *See Ricker v. Abrams*, 263 Md. 509, 283 A.2d 583 (1971) (conflicting evidence pertaining to alleged oral agreement between owner of liquor store and broker raised jury question as to existence of contract); *Steele v. Seth*, 127 A.2d at 390, 392–93 (finding that motel owner had employed broker to sell its property where owner, upon being informed by broker of existence of potential purchaser of motel ready to give substantial down payment, requested that the broker contact the purchaser and show him the property, and owner was liable for commissions despite fact that owner subsequently entered into exclusive agency agreement with another broker); *Heslop v. Dieudonne*, 209 Md. 201, 120

A.2d 669, 671–72 (1956) (by "allowing the appellee to show the property to various people [homeowners] impliedly contracted to use the appellee as an agent").

Note, however, that where an employment contract is formed between seller and broker, whether explicitly or by implication, it may be terminated by the seller before a broker supplies a purchaser willing and able to buy if such termination is done in good faith. In this event, the seller will not be liable for commissions even if the property is subsequently sold to a purchaser first found by the broker. *See Knopf v. Mercantile–Safe Deposit & Trust Co.*, 250 A.2d at 101–03 (finding termination of agency agreement); *see also MacWilliams v. Bright*, 273 Md. 632, 331 A.2d 303 (1975) (finding that buyer had not terminated agency agreement).

Szlendak, who is my brother, had attended St. Mary's Academy as a student, as had I, and therefore there was no need for us to enter the property since we were both quite familiar with it.

7. The inspection of the property in the latter half of 1986 by Mr. Szlendak and myself took place with the implied consent of the owner *since the property in fact was for sale,* Mr. Szlendak was a prospective purchaser interested in the property, and *I believed* the seller would be interested in having any prospective purchaser look at the property.[5]

This averment, coupled with Long & Foster's briefs and oral argument make Long & Foster's position unmistakably clear: an employment relationship arose by implication solely by virtue of the property being for sale and from the mere fact that Morgan, without the actual knowledge of the Institution or its agents, took a potential purchaser onto the property. This contention is untenable; under the facts of this particular case, it represents a considerable and unwarranted leap beyond existing Maryland law. *Steele v. Seth,* 127 A.2d at 390, 392–93, and similar decisions hold that implied employment contracts arise when permission to show property is given by a seller to a broker. Neither Morgan nor

Long & Foster aver that they showed the property with the permission or knowledge of the Institution or any of its agents. Under the circumstances of this case, neither Maryland law nor sensible policies support Long & Foster's contention that showing property that is for sale to a potential purchaser without the knowledge of the seller creates a contract of employment between the seller and broker. Such a rule would prevent a seller from attempting to control the showing of its property, and hence its liability for commissions, through utilizing a listing broker, as the Institute did here. Because Long & Foster has not averred facts that would support finding an agency relationship between it and the Institution, Previews, or Ray Runco Realty, and because the record indicates that no such relationship existed,[6] Long & Foster has failed to aver facts necessary to support its claim to the interpled funds under either Maryland law or the terms of the listing issued by Previews. *Compare Davis v. Phase I, Limited,* 354 A.2d at 478 (holding that seller's broker failed to show employment relationship with buyer that would entitle it to recover from buyer under § 14–105). Under these circumstances, O'Brien's motion for summary judgment should be, and hereby is, GRANTED.[7]

5. Affidavit of Christine Morgan, ¶¶ 6–7 (emphasis added).

6. That no agency relationship existed is supported by the following evidence of record: (i) the Affidavit of Raymond S. Runco, President of Ray Runco Realty, averring that "[i]t was my responsibility ... to comply with the seller's request that all prospects be registered with Previews, Inc." and that "[b]ased on my records, there is no evidence that Christine Morgan was on the property in a capacity as a sub-agent of Ray Runco Realty[;]" (ii) the Agreement of Sale itself in which the Institution and the purchaser—Jackson Realty—warranted that they had dealt with no brokers other than Previews and Quade representing O'Brien, (iii) the Affidavit of John Quade averring that Quade negotiated with Previews for one year to reach a sales agreement and the Agreement itself which indicated that Quade served as Escrow Agent under the Agreement for approximately one year; (iv) the Affidavit of Ronald Boykin, President of Jackson Realty during the relevant period, stating that "Jackson Realty, Inc. [the purchaser] dealt solely with John W. Quade of O'Brien & Associates, Inc. and Peter C. Ancona of Previews, Inc.[;]" and (v) letters in the record from

Casimir Szlendak to John Quade and O'Brien & Associates indicating that he had employed O'Brien & Associates to work on his behalf to purchase the property.

7. The Court's determination here that O'Brien & Associates is entitled to the interpled funds is not intended to affect the dispute, if any, between Christine Morgan and John Quade as to the selling agent's commission stemming from the sale of the property. In prior pleadings in this proceeding Morgan alleged that she, Szlendak, and Quade reached an agreement that Quade would handle Szlendak's real estate purchases but would split his sales commissions with Morgan. Morgan contended that she was entitled to one-half of any sales commission accruing to Quade from the sale of the property. This dispute between Quade and Morgan is not properly before the Court. As indicated by the Court's Order of February 15, 1991, dismissing Morgan as a party to this interpleader action, her claim, if any, is against Quade or O'Brien, not directly against the interpled fund. Any claim Morgan may have against Quade or O'Brien arises only after it is determined that O'Brien is entitled to the fund as a broker's commission.

Because the Court bases its grant of summary judgment on the lack of an agency or employment relationship between Long & Foster and the seller and its agents, the Court need not, and does not, reach the second issue of whether disputed material facts exist pertaining to whether Long & Foster qualifies under Maryland law as the "procuring cause" of the purchase of the property. The Court notes in passing, however, that merely being the first broker to show a property to the ultimate purchaser of that property does not appear sufficient under Maryland law to establish a broker as the procuring cause. In at least two cases very similar to the instant action, Maryland courts held that the party in Long & Foster's alleged position, namely, the first to show a property to the ultimate purchaser, was not on that account the procuring cause. Like the case at bar, *Burrell v. Frisby*, 212 Md. 181, 129 A.2d 75 (1957), involved an interpleader action. There, appellant Burrell was the first broker to show the property to the ultimate purchaser. At the time of the showing, however, the purchaser did not wish to buy the property. Two months later, Frisby, the appellee broker, through its agent Reid, showed the property to the same purchaser, who now, for reasons undisclosed in the opinion, was ready to buy. "As a direct result of the efforts of Reid and the appellee, a sale was consummated." 129 A.2d at 76. The second broker was deemed to be the procuring cause of the sale and received the commission. Similar in result is *Bowie v. Martin*, 199 Md. 58, 85 A.2d 786 (1952), where the listing

broker's decision to pay the commission to the first broker who showed the property to the ultimate purchaser was deemed erroneous and the commission was awarded to the broker who subsequently secured the sale of the property to the purchaser. *See also Fernando R. Sari, Inc. v. West*, 160 F.Supp. 390, 397–98 (D.Md.1958) (summarizing Maryland cases holding that "the mere fact of the agent having introduced the purchaser to the seller ... will not entitle him to compensation unless it appears that such introduction or disclosure was the foundation on which the negotiation was begun and concluded, and the sale made"). But since the evidence of record establishes that no employment relation existed between Long & Foster and the seller or its listing agents, the "procuring cause" issue is left for another day.[8]

Pursuant to Rule 54(b), Fed.R.Civ.P., the Court finds that there is no just reason for delaying entry of final judgment and hereby enters final judgment in this matter in favor of O'Brien & Associates. Coldwell is directed to file a submission within ten days from the date of this Order in support of its motion for attorney's fees and costs from the interpled funds. Thereupon an appropriate order directing the disbursement of the interpled funds will issue.

---

The Court's determination here also does not reach the question whether an employment contract was formed between Long & Foster and the buyer, namely Casimir Szlendak or Jackson Realty, Inc. *See Crosse v. Callis*, 263 Md. 65, 282 A.2d 86 (1971) (discussing circumstances under which broker could sue buyer for breach of agency contract); *see also Rhoderick v. Roy Hansen Mortgage Co.*, 260 Md. 129, 271 A.2d 647 (finding appellant but not appellant's corporation liable to loan broker). That issue is separate and distinct from the issue decided here, namely which broker is the selling broker entitled to recover the interpled commission.

**8.** The Court also does not reach an alternative argument presented by O'Brien pertaining to arbitration. O'Brien relies on Article 14 of the

*Code of Ethics and Standards of Practice of the National Association of Realtors*, which states, in relevant part, that realtors "shall" submit their disputes to "arbitration in accordance with the regulations of their Board or Boards rather than litigate [a] matter." O'Brien contends that the Court should award it the funds and that Long & Foster must then initiate an arbitration proceeding to recover the funds. O'Brien cites no regulations of any local real estate board supporting this result. Moreover, during oral argument Coldwell represented that it approached the relevant local board, which refused to accept this matter for arbitration. There is, therefore, no basis to conclude that this interpleader action should be arbitrated before a local real estate board.