**BELANGER et al. v. HOPEMAN BROS., Inc.**

Civ. A. No. 400.

District Court, D. Maine, S. D.

Feb. 5, 1947.

Allan A. Tepper, of Boston, Mass., and Barnett I. Shur, of Portland, Me., for plaintiffs.

George H. Foley, Wage & Hour Div. Dept. of Labor, of Boston, Mass., amicus curiæ.

William B. Mahoney and Wadleigh B. Drummong, both of Portland, Me., for defendants.

PETERS, District Judge.

This is an action brought under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), by employees of the defendant, a sub-contractor who did carpentry work on cargo vessels being built for the Government at the South Portland shipyards during the war. The plaintiffs seek to recover unpaid overtime compensation for time spent in walking from the yard entrance to the place of work and compensation for work-time not paid for because of penalties exacted for being late.

The case was heard on a motion for summary judgment filed by the defendant under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section .723c. The record consists of the complaint and answer and certain affidavits filed in behalf of both parties.

The defendant maintains that these show there is between the parties "no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law.

The defendant contends, first, that the plaintiffs are not covered by the Act, and, second, that if covered, there was no violation.

It is clear that if, for any reason, the Act is not applicable the defendant's motion should be granted.

First as to coverage: It is claimed that the Act does not apply, because (1) plaintiffs employed by defendant were not engaged in the "production of goods for commerce" under Section 3(i), 29 U.S.C.A. § 203(i), and (2) that the ships were intended for war and not for commerce.

The plaintiffs' claim is necessarily founded on the proposition that while employed by the defendant they were engaged in the production of goods for commerce within the meaning of the Act. It is so alleged in the complaint and denied in the answer.

It does not appear to be questioned that their work was necessary to the building of the ships and that it constituted "production" of those ships under the definition of production in Section 3(j) of the Act; but it is contended by defendant that

the ships were not "goods" under Section 3(i) because they had been delivered "into the actual physical possession of the ultimate consumer thereof, other than a producer, manufacturer, or processor thereof", before the work on them was performed. The Section relied upon reads as follows: " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

The defendant says in substance that it is now an undisputed fact that such delivery took place because it has filed an affidavit to that effect which has not been disputed by a counter-affidavit.

■ I think this indicates some misconception of the rule. Its purpose is to enable parties to a case in court, by filing pleadings, affidavits and admissions, or otherwise, to squeeze out of the case all matters in controversy, except the law, and to authorize the court to give judgment on undisputed facts. But that is not accomplished by merely re-asserting in affidavit form a defense already set up in the answer. An assertion which amounts to nothing more than a denial of the existence of the statutory situation which creates the right of action does nothing to lessen the issues involved, unless admitted. A party to an action cannot push the other party out of court by swearing he has no case. The plaintiffs bring their action under the Fair Labor Standards Act and claim, necessarily, to have produced "goods" as defined by the Act. For the defendant to say that the work of the plaintiffs does not come within the statutory definition of "goods", does not remove that essential matter from the controversy between the parties. It is still an issue in the case because the plaintiffs have not agreed to remove it.

■ Whether the material the plaintiffs worked on or the ships had been delivered into "the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof", within the meaning of the statute, is a mixed question of law and fact, and plainly stands as an issue regardless of the matter of title which was admittedly in the United States. Possession does not necessarily follow title.

It has been pointed out in the brief which has been filed by the Administrator of Wage and Hour Division, Department of Labor, as amicus curiæ, that in the affidavit itself, filed by the defendant, there is evidence of possession not having followed the title. It is there stated that during the work the United States reserved the constant right of inspection and supervision of the work; that it relieved the defendant of liability for loss or damage where insurance was not required and paid for insurance when it was required,—indicating a situation inconsistent with full possession by the Government.

Without laboring the point, it is perfectly clear, as I look at it, that not only has this issue not been eliminated by the pleadings and affidavit, but remains a very controversial one to be settled at the trial.

It follows that I cannot, under the rule, give a summary judgment on the question raised, the record being as it is. There still exists a genuine issue as to a material fact in the question of whether or not the ships were delivered into the actual physical possession of the ultimate consumer thereof, other than a producer, manufacturer, or processor, before the work in question was performed. Musteen v. Johnson's Ind. Gasoline Co., 8 Cir., 133 F.2d 106.

■ The defendant also claims that the plaintiffs cannot avail themselves of the provisions of the Act because they were not engaged in producing goods for commerce, but for war. There is no question that the ships were to be used in prosecuting the war, but I fail to be convinced that workers on them were thereby deprived of the rights given them under the Act. It does not say so, and, being the remedial legislation that it is, must be

462

broadly construed as to coverage. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

■ The definition of "commerce", as that word is used in the Act, is so broad, covering "* * * transportation, transmission, or communication * * * from any State to any place outside thereof", and the court taking judicial notice that these cargo ships were destined to leave Maine and transport men and things all over the world, militate strongly against the interpretation suggested by the defendant.

I do not feel that the fact that the ships were to be engaged in wartime Government business and not private trade is sufficient to deprive shipworkers of the benefit of the Act.

The defendant further claims that, even if the Act applies to the situation here, summary judgment should be given the defendant without further inquiry into the merits of the claims made against it. One hesitates to say that a litigant shall not have his day in court, especially when he stands at the door demanding a jury trial.

■ To be sure there is not much dispute about the facts but there is some. It seems to be undisputed that the time of the workmen spent in walking to and from work, which is being sued for, was not time spent on defendant's property and might not come within the scope of recent decisions relied on by the plaintiffs; but that is something I do not decide in view of the fact that the other claims of the plaintiffs, relating to penalties for lateness, does involve dispute as to facts and must be heard by the jury. I refer to the contradictions in the affidavits filed for the parties in relation to time of punching the time clock and other differences concerning the deductions from wages.

The basic issues raised in this case are of great importance and I do not think a fair and just judgment could be given in the summary way desired by the defendant, without hearing the evidence, nor do I feel that the situation is such that I have the authority to do so under Rule 56.

I feel obliged to deny the motion for summary judgment.