# JOHN C. DAVIS *v.* PHASE I, LIMITED

[No. 555, September Term, 1975.]

*Decided March 29, 1976.*

The cause was argued before MORTON, MELVIN and MASON, JJ.

*Bernard F. Goldberg*, with whom was *Michael A. Weal* on the brief, for appellant.

*Thomas A. Garland* for appellee.

MELVIN, J., delivered the opinion of the Court. MASON, J., dissents and filed a dissenting opinion at page 702 *infra*.

In this appeal the appellant, John C. Davis (plaintiff below), complains that the Circuit Court for Howard County (Mayfield, J.) was wrong in deciding that he was not entitled to a brokerage commission from Phase I, Limited (appellee here and defendant below). We think Judge Mayfield was correct and shall affirm the judgment below.[1]

On April 21, 1973, Mr. John Santini, who is not a party to the proceedings, employed appellant Davis, a licensed real estate broker, to sell "66½" acres of land owned by Santini and others in Howard County. The "Multiple Listing Contract" signed by Santini (Seller) and given to Davis provided that:

> *"The undersigned owner agrees to pay said Realtor a commission for services rendered in the amount set forth below, (1) if during the term of*

---

1. The case was tried by the court without a jury. At the end of plaintiff's case defendant moved for a dismissal. Rule 535. The judge "reserved" his ruling. Defendant then offered evidence. At the close of all the evidence, the judge again announced "I'll reserve my ruling on your motion" referring to defendant's motion made at the end of plaintiff's case. In his "Memorandum and Order" filed in the case the judge "granted" the motion. Plaintiff's appeal is from "the Memorandum and Order". Technically, therefore, the appeal is from the judge's "reserved" ruling on the defendant's motion to dismiss. We observe that when the defendant presented evidence after the judge "reserved" his ruling on the motion, the effect was a withdrawal of the motion. Therefore, there was no motion to rule upon at the end of the case. It is apparent, however, that the judge's decision was based on all the evidence at the close of the entire case. There is no indication that his decision was based on a view of the evidence most favorable to the plaintiff, the test applied in deciding a defendant's motion for dismissal in a nonjury trial upon completion of plaintiff's evidence. Testerman v. H. & R. Block, Inc., 22 Md. App. 320 (1974). In any event, the record reveals no dispute concerning any of the material facts admitted as evidence. The issues presented were issues of law as applied to undisputed facts. We therefore treat the appeal as from the judge's decision on the sufficiency of the evidence at the close of the entire case rather than from a ruling on a motion to dismiss.

*this contract * * * said Realtor produces a customer to purchase said property at the listing price shown above or at such other price as shall be accepted by the owner or agreed upon in writing between the owner and the Realtor;* or (2) if said property is sold * * * by the owner or through the Realtor or others during the term of this contract * * * to anyone who, with the knowledge of the owner, inspected or made inquiry about the property during the term of this contract * * * ; except that said Realtor shall have no claim upon the owner for any commission if the property is so sold * * * after the expiration of this contract * * * .

*In the event of a sale, the commission is to be 10% of sales price, * * * .*

*If a deposit made on any contract of sale shall be forfeited, the commission for the Realtor's services shall be one-half of the amount forfeited, but in no event to exceed an amount equal to the full commission specified herein. "* (Emphasis added.)

David procured the appellee (Buyer) to purchase the property. On July 5, 1973, Buyer and Seller signed a contract of sale providing in pertinent part as follows:

"1. *Purchase Price and Terms of Payment.* The purchase price for the Property is *Six Thousand Dollars ($6,000.00) per acre as surveyed pursuant to the terms and conditions of Paragraph Four* as hereinafter set forth, which shall be paid by Buyer to Seller in the following manner:

(a) Upon the execution of this Agreement Buyer shall pay to Broker Five Thousand Dollars ($5,000.00) in cash as a deposit to be held in escrow with interest thereon until the time of release of the aforesaid Five Thousand Dollars ($5,000.00) to be paid to Buyer.

(b) At settlement Buyer shall pay to Seller, in cash, a sum equal to Twenty-six Percent

(26%) of the purchase price as determined above of which the deposit shall be a part."

\* \* \*

"4. *Survey.* Buyer at its expense shall cause to be made a survey of the Property *which said survey shall be the basis of the computation of the purchase* price as hereinabove provided for."

\* \* \*

"6. *General.*

(g) The Parties recognize Columbia Real Estate [Davis] as the Broker negotiating this sale. Buyer agrees to pay said Broker a brokerage fee for services rendered amounting to Twenty-nine Percent (29%) of Ten Percent (10%) of the sales price *at the time of settlement.* Buyer agrees to give said Broker its promissory note for Seventy-One Percent (71%) of the Ten Percent (10%) brokerage fee without interest payable in Two equal annual installments *measured from the date of settlement.* " (Emphasis added.)

The contract also provided for settlement on or before October 15, 1973, and a deposit of $5,000 to be held in escrow by the broker. Davis received the deposit from Buyer and deposited it in an escrow account.

On January 25, 1974, Davis wrote to Buyer as follows:

"I am writing on behalf of *my clients* John S. Santini el al., concerning the contract of sale which Phase One entered into on July 5, 1973. The time for settlement was October 15, 1973, it is now over 90 days past that scheduled settlement date. *Our clients* would like you to respond in writing as to exactly how you intend to proceed.

In any event I wish to make my position absolutely clear concerning the real estate com-

mission; we have earned our commission and expect that it will be paid irrespective of any subsequent agreement that you may reach with Santini et al. Thank you." (Emphasis added.)

Buyer's reply was a letter to Davis dated February 18, 1974:

" * * * . As I explained to you over the telephone on several occasions, the lending institution once interested in financing our purchase * * * has not acted and we must presume that it does not now wish to make the deal. From the point of view of Phase One, Ltd., the Santini Group is under no contractural obligation written or oral, legal or moral to hold the property subject to our contract. The extension Mr. Santini kindly granted us was unable to be fulfilled on our part.

*You may rest assure [sic] that our interest in the property continues. In the event that we should for some reason we are not now able to foresee become able to purchase the property we will come back through your office so that you will be protected under any commission arrangement you have with the Santini group.* I am enclosing an additional copy of this letter so that you may deliver it to Mr. Santini." (Emphasis supplied.)

Davis' reply written to Buyer, dated March 18, 1974, was succinct:

"I am hereby calling for payment of the real estate commission due in the above referenced contract as specified in paragraph 6 (G). Thank you."

On April 8, 1974, Davis filed suit against Buyer claiming a commission of $39,954.00 allegedly due him under the terms of paragraph 6 (g) of the contract of sale between Buyer and Seller. Since Davis was not a signatory to the contract, he was apparently proceeding under the third-party beneficiary

doctrine. In any event, Buyer does not contest Davis' standing to bring the action. That issue is not before us.

The record does not reflect that Seller has ever taken any action to enforce the contract of sale. Nor do we know from the record before us whether the contract is still a viable one between its signatories. In any event, settlement between Buyer and Seller had not taken place as of the time of the trial on the merits on December 17, 1974.

Davis argues that paragraph 6 (g) of the contract of sale requires Buyer to pay him his commission "at the time of settlement", which was to have been on or before October 15, 1973, and that although settlement has never taken place, Buyer owes him a commission in the amount of $39,954.00 because 1) he has "earned" it and 2) the "occurrence of settlement is not a condition precedent" to his right to receive a commission from Buyer. With respect to both points he invokes Real Property Article § 14-105 (formerly Art. 21, § 14-105, Md. Code, 1973 Repl. Vol.). Section 14-105 is a codification of a 1910 Act of the General Assembly and provides that:

> "*Whenever, in the absence of special agreement to the contrary, a real estate broker employed* to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a purchaser, seller, lessor or lessee, mortgagor or mortgagee, borrower or lender, as the case may be, and the person so procured is accepted as such *by the employer,* and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable *to the employer,* and such contract is accepted *by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance by such contract be prevented, hindered or delayed by any act of the broker.*" (Emphasis added.)

A threshold prerequisite to the application of the statute is an existing agreement between the broker *and his employer* whereby the broker is "employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon." It is to this kind of agreement that the statute may apply to fix the time when, in the absence of special agreement between the broker *and his employer,* the broker is entitled to commissions. The statute after all does nothing more than supply a provision in a particular kind of employment contract that the parties have omitted. It is really only a legislatively mandated rule of construction to be used in construing commission agreements in *"certain situations"*. See *Wyland v. Patterson Agency,* 271 Md. 617, 623 (1974).

In *Wyand, supra,* the Court of Appeals speaking through Judge Eldridge reviewed the Maryland law applicable to real estate commissions as it existed prior to the enactment of the 1910 statute.

> "Long ago this Court decided that where one *employed* a real estate broker under an agreement that the broker would be entitled to a commission if there were a 'sale' of the property, or if the property were 'sold,' or if the broker 'procured a purchaser' or similar language, and the agreement did not more specifically set forth when or at what stage in the sale process the right to a commission accrued, a fully consummated sale had to take place before the broker was entitled to a commission. Unless the proof showed that the *broker's employer was guilty of fraud or arbitrary or capricious conduct, the mere procurement of a willing buyer, or even the execution of a contract for the sale of the property, was not sufficient."* (Citing cases). (Emphasis added.)

> \* \* \*

> "Consequently, it was settled early in this State that the word 'sold' or similar language in a commission agreement with a real estate broker

would be construed to mean a consummated sale and not a contract to sell. This *rule of construction* was changed for *certain situations* [emphasis in original] by the Legislature * * *." (Emphasis added.)

In *Wyand, supra,* property owners employed a broker to sell their farm under an "Exclusive Sales Listing" agreement whereby the owners agreed to pay the broker a 10% commission if "you procure a buyer, or if the property is sold within said time by * * * any other broker * * *." Another broker procured a buyer with whom the sellers entered into a contract of sale. The original broker, citing the statute, claimed his commission arguing *inter alia* that the farm was "sold" when the contract of sale was executed. The Court found the argument unsound and held that, "As this Court has pointed out on several occasions, the statute, by its clear terms, applies only when the broker claiming the commission is the procuring cause of the sale. If some other broker finds the buyer, § 14-105 has no application". (Citing cases).

Thus, even though a contract of sale has been executed by a broker's employer, the statute does not automatically apply to entitle the broker to a commission even from his employer. In addition to the requirement that the broker claiming the commission must be the procuring cause of the sale, we think the statute, by its clear terms, also only applies when there is an employment relationship between the broker claiming the commission and the one from whom he claims it.

Paragraph 6 (g) of the contract of sale is not an employment contract. By its terms Davis was not "employed" by Buyer to sell or buy the property. Nor may an employment relationship between Davis and Buyer be "implied from the words and conduct of the parties and surrounding circumstances." (See *Weinberg v. Desser,* 243 Md. 347, 354 (1966)). The record is clear that at the time the contract of sale was executed Davis had already been "employed" *by Seller* to sell the property, as evidenced by

the "Multiple Listing Contract" placed in evidence by Davis. Moreover, according to Davis, he had already fulfilled the obligations of that employment. Since paragraph 6 (g) did not create, expressly or by implication, an employment relationship between Davis and Buyer, it follows that the statute cannot be invoked to supplement or explain its terms. Whether or not the statute would be applicable in construing the "Multiple Listing Contract" is not before us and we express no opinion on that question. We hold only that the statutory rule of construction embodied in the statute does not apply to paragraph 6 (g) of the contract of sale.

We emphasize again that Davis' suit against Buyer is based solely on paragraph 6 (g), and not upon the terms of his employment arrangement with Seller. The dispute over commissions that comes to us here is therefore not the customary one between a broker and one who employed him to sell or buy real estate. Rather it is a suit by the seller's broker against the buyer, based entirely on a provision in the contract of sale between buyer and seller in which the buyer, as part of the consideration for the property flowing from buyer to seller, agreed to pay a commission to seller's broker "at the time of settlement". Viewed in this light it is clear that whatever rights Davis acquired *from Buyer* when the contract of sale was executed were conditioned upon there being a "settlement", i.e. a consummated sale. Under the plain terms of paragraph 6 (g) Buyer owed Davis nothing until that time arrived. So far as Buyer is concerned, the commission is neither "earned" from him nor due by him prior to that time.

Davis also contends, somewhat inconsistently, that although the statute dictates a judgment in his favor (because he "earned" his commission when the contract of sale was executed), he is entitled to judgment in any event because the Buyer defaulted on the contract. This argument would have merit if it were shown that Buyer's failure to settle with Seller was due to some arbitrary, capricious, or fradulent conduct on its part designed to deprive Davis of his commission. There is no such evidence in this case. The

record is clear that the only reason Buyer did not settle was its financial inability to do so. Moreover, as we have indicated, there is no evidence that Seller had taken or threatened any action against Buyer to enforce the contract of sale as of December 14, 1974 — more than 14 months after the scheduled date of settlement. This fact and the correspondence in evidence indicate that Seller may well have decided to retain the deposit and regard Buyer's obligations under the contract at an end. The contract is either at an end or it is still viable between the parties. If the former, Buyer's obligations under it, including the payment of a commission to Davis, are over. If the latter, the possibility still exists for a settlement, in which event Buyer would be bound to pay any commission still due Davis pursuant to paragraph 6 (g) of the contract.

Since the condition precedent to Buyer's duty to pay the broker's commission has not occurred, and since there is no evidence that Buyer deliberately prevented the settlement for the purpose of depriving the broker of his commission, the judgment for Buyer will be affirmed.

Even if paragraph 6 (g) could be regarded as an employment agreement between Davis and Buyer, the statute would still be inapplicable to sustain Davis' contention that his right to a commission had vested at the time the contract of sale was signed. In *Berman v. Hall*, 275 Md. 434 (1975), a real estate contract of sale contained the following clause:

> "AGENCY: the Seller recognizes George Berman as the Agent negotiating this Contract and agrees to pay Five percent (5%) of the sale price commission for services rendered, *same to be due and payable upon the settlement of this Contract.* The entire deposit shall be held by ... [the purchaser's attorney], until settlement hereunder is made and the party making settlement is hereby authorized and directed to deduct the aforesaid commission from the proceeds of the sale and pay same to said Agent. If the sale is not closed because

of the Purchasers default the commission shall be one-half (¹/₂) the amount of the deposit.

> "The Agent hereby agrees to the within commission provisions but assumes no responsibility for the condition of the property or for the performance of the Contract by any or all parties hereto." (Emphasis supplied.)

Settlement did not take place at the time scheduled by the contract. Instead, the sellers and the purchaser executed a "mutual release", releasing "each other from any and all obligations arising out of the Contract". The broker was not a party to the "mutual release". In his suit for a commission from the sellers, the broker invoked the statute, arguing that he became entitled to his full commission upon the execution of the contract of sale and that references in the contract to the commission being due and payable at the time of settlement, and to be deducted from the sale proceeds, merely reflected an intention that, "as an accommodation to the sellers ..., [the broker] agreed to postpone the physical payment of that commission until settlement". In the case at hand, Davis makes much the same argument. The Court held that the broker's reliance on the statute was misplaced because "as the language of the statute makes clear, where the parties enter into an agreement specifying *a different time when* the right to a brokerage commission accrues, the agreement and not the statute is controlling. 'The issue then becomes the parties' intent under that agreement.' " (Citations omitted) (Emphasis added). The Court in *Berman, supra,* went on to say, at 438, 440:

> "The broker's argument ignores the plain meaning of the contract language. The words 'due and payable at the time of settlement' denote something more than a postponement of the time for payment as an accommodation. If the commission is not *due* until settlement, and not *payable* until then, the right to it clearly does not accrue until settlement." (Emphasis in original).

* * *

> "Since, under the factual allegations of the broker's amended declaration in the present case, the broker was not entitled to a commission *unless settlement occurred* or unless the purchaser defaulted causing a forfeiture of the deposit, and since neither of these contingencies happened, the circuit court correctly sustained the demurrer." (Emphasis added.)

In the case *sub judice*, as we have already held, the language of paragraph 6 (g) of the contract of sale manifests the clear intention of the parties that Davis was not to be paid a commission by the Buyer until and unless there was a "settlement". Such language is a "special agreement to the contrary" within the meaning of the statute and the statute is therefore not applicable in determining the rights of the parties to this controversy.

*Judgment affirmed.*
*Appellant to pay costs.*

*Mason, J., dissenting:*

Appellant, John C. Davis, operating as Columbia Real Estate, is a licensed real estate broker who was authorized by John S. Santini, et al., the sellers, to offer 66.59 acres of land in Howard County for sale. Davis procured a purchaser, appellee, Phase I, Limited and after negotiations, the buyer and sellers entered into a contract of sale for the land on July 5, 1973. In pertinent part, the contract stated:

> (g) The Parties recognize Columbia Real Estate as the Broker negotiating this sale. Buyer agrees to pay said Broker a brokerage fee for services rendered amounting to Twenty-Nine Percent (29%) of Ten Percent (10%) of the sale price at the time of settlement. Buyer agrees to give said Broker its promissory note for Seventy-One Percent (71%) of the Ten Percent (10%) brokerage fee without interest payable in Two equal annual installments measured from the date of settlement.

The contract provided for settlement on or before October 15, 1973. Phase I, however, was unable to obtain financing. Consequently, settlement never occurred.

After demands for payment of the broker's commission were refused, Davis filed suit in the Circuit Court for Howard County. At the close of Davis's case, Phase I made a motion to dismiss, which was granted.[1] From this judgment, Davis filed an appeal.

At the time the contract was entered into, the statute governing real estate brokers' commissions in Maryland was Code, Art. 21, § 14-105 (now substantially unchanged as Real Property, § 14-105), which stated:

> Whenever, *in the absence of special agreement to the contrary,* a real estate broker employed to sell, buy, lease, or otherwise negotiate real or leasehold estate or mortgages, or loans thereon, procures in good faith a purchaser, seller, lessor or lessee, mortgagor or mortgagee, borrower, or lender, as the case may be, and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance of such contract be prevented, hindered or delayed by any act of the broker. (emphasis added).

This statute was designed to settle the question when, in the

---

1. The Court reserved judgment on the motion to dismiss and permitted Phase I to offer some evidence. The evidence offered, however, was subsequently stricken from the record and the motion to dismiss was granted. I disagree with the majority's treatment of the case as an appeal from the court's decision on the sufficiency of the evidence at the close of the entire case, rather than from its ruling on a motion to dismiss. Phase I clearly was not permitted to present its entire case.

absence of special agreement, a real estate broker is entitled to commission. *Wyand v. Patterson Agency,* 271 Md. 617, 319 A. 2d 308 (1974); *Snider Bros., Inc. v. Heft,* 271 Md. 409, 317 A. 2d 848 (1974). The Court of Appeals has interpreted "special agreement to the contrary" to be "an agreement specifying when in the sale process . . . the right to a commission accrues." *Wyand v. Patterson Agency, supra,* 271 Md. at 624. If such a special agreement exists then the statute does not apply, and Maryland cases hold the broker cannot recover a commission if, as here, the contract was not consummated. *See Wyand v. Patterson Agency, supra,* 271 Md. at 625. By the same token, if there is no special agreement between the parties as to when the broker's right to commissions comes into being, the statutory provisions control. *Snider Bros., Inc. v. Heft,* 271 Md. at 416.

The lower court in its memorandum opinion stated in part:

> The view of this Court is dictated by the language in Paragraph 6 (g) of the contract, and, in its opinion, "settlement" constituted a condition precedent to the earning of the commission, and, therefore, there was a special agreement as to the payment of any commission.

In the proceedings below and before this court both in brief and argument, the issue was whether the provisions of Paragraph 6 (g) of the contract constituted a special agreement to the contrary under the statute. The majority does not find it necessary to address this issue because it construes the statute as only applying "where there is an employment relationship between the broker claiming the commission and the one from whom he is claiming it". Thus, under this interpretation, the contract here would not come within the orbit of the statute. A careful reading of the statute, however, does not support this construction. The majority, by interpolation and implication, makes the statute express an intention clearly not evidenced by its language.

The statute itself plainly sets forth the conditions that

must be met before a broker is entitled to his commission. The statute requires: (1) the procurement in good faith of a purchaser by the broker; (2) acceptance of the purchaser by the broker's employer; (3) entrance by the purchaser into a valid, binding, and enforceable written contract in terms acceptable to the broker's employer; (4) the employer's acceptance of the contract and signature thereon. In the present case, all of these conditions have been met. The statute is clear that once these conditions have taken place, the broker has earned his commission, provided of course, there is no special agreement to the contrary, or wrongful interference with the performance of the contract by the broker. The statute does not require the existence of an employment relationship between the broker and the one from whom he is claiming his commission. In *Cohen v. Duclos*, 272 Md. 41, 321 A. 2d 145 (1974), the Court of Appeals was called upon to determine the right of a real estate broker to recover a commission from the prospective buyer of the property. Although in that case there was no evidence of an employment relationship between the broker and the purchaser, the Court of Appeals decided the case on the basis that the provisions contained in the contract of sale constituted a special agreement to the contrary under the statute.

The fact that no employment relationship existed between the broker and the purchaser in this case is of no controlling significance. The issue, which all the parties involved in the litigation assumed, is whether the contractual provisions in this case constituted a special agreement to the contrary under the statute. In my view, the contractual provisions, without more, did not make settlement a condition precedent to the payment of the broker's fee. This conclusion is buttressed by dictum from *Wyand v. Patterson Agency, supra*. There a listing broker claimed a commission under a contract providing for a commission "if the property was sold". The seller accepted a contract from the buyer procured by a non-listing broker, and the buyer later refused to perform. In the course of holding § 14-105 inapplicable on other grounds, the Court of Appeals stated:

> ... [W]e do not think that an agreement to pay a commission "if the property is sold" constitutes a "special agreement to the contrary" within the meaning of § 14-105. If it did, the statute would be rendered almost nugatory. In virtually all cases where a property owner ... employs a real estate broker, there is an agreement or understanding that the commission will be paid if the property is "sold" or if there is a "sale" or if a "purchaser" is procured. The question is: at what stage in the process is the property "sold" or is there a "sale" or is there a "purchaser"? It is this very question to which the statute and the previously discussed cases are addressed ... 271 Md. at 624.

Although dictum, this is a strong indicator that language merely describing the time of payment is not sufficient to constitute a special agreement within the meaning of § 14-105, without other circumstances or contract language.

The case of *Berman v. Hall*, 275 Md. 434, 340 A. 2d 411 (1975), relied on by the majority is clearly inapposite. In that case there were two special agreements, (1) the commission was not due and payable until settlement; and (2) the commission was to be deducted from the proceeds of the sale. In the case, *sub judice*, the language of the contract was markedly different. There was no provision to the effect that the commission was due and payable at settlement or that the commission was to be paid from the proceeds of the sale.

In consideration of the evidence and the reasonable inferences therefrom, in a light most favorable to Davis, Phase I's motion to dismiss was improvidently granted. I do not suggest however that the terms of the contract in this case are so clear as to preclude Phase I from establishing, after a full trial, that settlement was in fact a condition precedent to the payment of the broker's commission. I would remand this case for further proceedings and admit parol evidence to explain the terms of Paragraph 6 (g) of the contract. *Snider Bros., Inc. v. Heft*, 271 Md. 409, 419, 317 A. 2d 848 (1974); *Missler v. Anne Arundel County*, 271 Md. 70,

80, 314 A. 2d 451 (1974). This is so despite the existence of an integration clause in Paragraph 6 (c). *See Whitney v. Halibut,* 235 Md. 517, 202 A. 2d 629 (1964); *Rinaudo v. Bloom,* 209 Md. 1, 120 A. 2d 184 (1956).

For the reasons set forth herein, I respectfully dissent.