**TRANSPORT PROPERTIES, INC., Plaintiff,**

v.

**ABC TREADCO, INC., and Red Star Express Lines of Auburn, Inc., Defendants.**

**No. 83 Civ. 3559.**

United States District Court, S.D. New York.

June 18, 1984.

Arthur A. Anderman, Forest Hills, N.Y., for plaintiff; Joel S. Charleston, Forest Hills, N.Y., of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant ABC Treadco Inc.; James G. McCarney, New York City, of counsel.

John P. Doyle, Jr., Auburn, N.Y., for defendant Red Star Express Lines of Auburn, Inc.

## OPINION

EDWARD WEINFELD, District Judge.

In this diversity action, plaintiff, Transport Properties, Inc. ("Transport"), seeks recovery of a real estate brokerage commission alleged to be due on the sale of a trucking facility in Baltimore, Maryland, by defendant, ABC Treadco, Inc., successor in interest to Arkansas Bandag Corporation (collectively, "Treadco"), to defendant, Red Star Express Lines of Auburn, Inc. ("Red Star"). Defendants jointly move for summary judgment dismissing Transport's claims for (1) breach of contract, and (2) conspiracy to deprive plaintiff of its commission.

On January 3, 1979, Transport and Treadco entered into an agreement whereby Treadco appointed Transport "exclusive agent with the sole and exclusive right to negotiate for and to sell the truck terminal ... [at] 5495 Levering Avenue, Baltimore, Maryland, ... [for] $610,000." Treadco reserved "the right to accept any lower offers or to accept any offers for a lease."

The stated term of the agency was to be ninety days, and, if a transaction were consummated during the ninety-day period, Transport would be entitled to a "brokerage commission calculated at six percent (6%) of the sales price or total net lease payments." The agreement also provided that plaintiff would receive a "full" six percent commission if "a transaction is consummated during the four (4) month period following the expiration of this agreement with any party to whom Transport Properties offered the premises."

No sale to "any party to whom Transport Properties offered the premises" occurred within the ninety-day term or the following four months. Transport, however, did conduct negotiations with Red Star on behalf of Treadco, which resulted in an agreement whereby Red Star leased the trucking facility for two years with an option to purchase. A letter of January 29, 1979, from Transport's president, David Ettenberg ("Ettenberg"), to Woody May ("May"), a Treadco vice-president, sets forth the terms of the proposed lease/option. On March 6, 1979, the lease/option agreement was signed by representatives of Treadco and Red Star, granting Red Star a leasehold of the premises from April 1, 1979, through March 31, 1981. The lease contained an option clause and also provided for payment of brokerage fees to plaintiff, as follows:

XIX. During the first eighteen months of the lease term, the Tenant will have the right and option to purchase the leased premises for the sum of $575,-000.00 cash.

.        .        .        .        .

The Landlord and Tenant agree that Transport Properties, a real estate broker[,] ... was the agent for the Landlord in obtaining the lease and purchase option. Upon execution of the lease by the parties hereto, the Landlord will pay to Transport Properties a commission in the amount of 6% of the total net lease pay-

ments of the lease term. In the event the property is purchased by the Tenant as provided herein, an additional commission of 6% of the sales price shall be due and payable by the Landlord to Transport Properties at the time of closing of the transaction, less any commission received for any unexpired portion of the lease.

Plaintiff, by its president, also was a signatory to the agreement. Transport was paid the six percent commission on the total net lease payments, an amount totalling $7,416.00.[1]

It is undisputed that Red Star did not exercise its option to purchase the trucking facility within the eighteen-month period specified in the lease as commencing on April 1, 1979. However, more than four months after the expiration of the option period, but a month before the termination of the lease, Red Star and Treadco, on February 25, 1981, entered into an agreement of sale whereby Red Star purchased the property for $480,000.00. The title closing was on March 31, 1981. Plaintiff did not participate in the negotiation of the purchase contract. Plaintiff asserts that even though the purchase option was not exercised by Red Star prior to its expiration, it is entitled to an additional commission of six percent based, not on the reduced sales price of $480,000.00, but on the original option price of $575,000.00.[2]

■ As our Court of Appeals has often stated, on a motion for summary judgment, "a court 'must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, ... with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute[.]' "[3] Yet while our Court of Appeals has rigidly applied Rule 56 to ensure that no litigant is deprived of its right to a jury trial, at the same time it has recognized that, if Rule 56 is to be more than a dead letter, it must be applied to permit the granting of judgment where a jury trial would be a mere formality.[4]

■ The issue here centers about whether, pursuant to the terms of the parties' agreement, Transport is entitled to a six percent commission on the sale of the Baltimore property to Red Star almost five months after expiration of the option period specified in the lease/option agreement. The parties agree that, under New York's "grouping of contacts" test, which renders applicable the " 'law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation,' "[5] a New York court would resolve the issue by resorting to the substantive law of Maryland.[6]

---

1. The monthly rental on the trucking facility was established at $5,150.00.

2. Complaint ¶ 15. Upon the argument, plaintiff's counsel conceded that Transport is owed at most only six percent of the $480,000.00 sales price.

3. *Archer v. Dutcher,* 733 F.2d 14 (2d Cir.1984) (citation omitted); *see Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983); *Beacon Enters. Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983).

4. *See Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979), *aff'd,* 697 F.2d 293 (2d Cir. 1982); *see also Flum Partners v. Child World Inc.,* 557 F.Supp. 492, 497 (S.D.N.Y.1983) (*quoting Applegate v. Top Assocs., Inc.,* 425 F.2d 92, 96 (2d Cir.1970)); *Samuels v. Eleonora Beheer, B.V.,* 500 F.Supp. 1357, 1365 (S.D.N.Y.1980) (same), *aff'd,* 661 F.2d 907 (2d Cir.1981).

5. *Hormel Int'l Corp. v. Arthur Andersen & Co.,* 55 A.D.2d 905, 906, 390 N.Y.S.2d 457, 458 (1977) (*quoting Babcock v. Jackson,* 12 N.Y.2d 473, 481, 191 N.E.2d 279, 281, 240 N.Y.S.2d 743, 749 (1963)).

6. Although all three parties allegedly do business in New York, only one, Red Star, is a New York corporation. Transport is a New Jersey corporation; Treadco, and its predecessor, are Arkansas corporations. Here, substantial portions of Transport's alleged performance were rendered in Maryland, where the real estate in question is located. *See Ingrassia v. Shell Oil Co.,* 394 F.Supp. 875, 882, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (S.D.N.Y.1975); *cf. Shaffer v. Heitner,* 433 U.S. 186, 208 (1977) ("[s]tate's strong interests in ... providing a procedure for peaceful resolution of disputes about the possession of ... property" within its borders).

Analysis of the applicable law and the parties' contentions must begin with Maryland Real Property Code § 14–105 (1974), which provides:

In the absence of special agreement to the contrary, if a real estate broker employed to sell, buy, lease, or otherwise negotiate the property, procures in good faith a purchaser, vendor, lessor, lessee, mortgagor, mortgagee, borrower, or lender, as the case may be, and the person procured is accepted by the employer and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale, purchase, lease, mortgage, loan, or other contract as the case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered into is performed, unless the performance of it is prevented, hindered, or delayed by any act of the broker.

Defendants, for the purposes of this motion, do not dispute that plaintiff was the broker who procured Red Star as the lessee and as the prospective purchaser under the lease/option agreement and acknowledge that if Red Star had exercised the option to purchase by September 30, 1980, the date of its expiration, plaintiff would have been entitled to an additional commission. Defendants contend, however, that Transport's entitlement to an additional commission arising from the sale of the property is governed by a "special agreement to the contrary," within the meaning of the Maryland statute, in particular paragraph XIX

of the lease/option agreement. They assert that, pursuant to the lease/option agreement, which was not only signed by plaintiff's president but also "agreed to" by him,[7] the sale of the trucking facility within the eighteen-month option period, as specified in the agreement, was a condition precedent to plaintiff's right to an additional commission, negating plaintiff's claim under Maryland's "procuring cause" rule. Thus, defendants assert that since this condition precedent was not satisfied—that is, the eighteen-month purchase option period expired without the option having been exercised—plaintiff is foreclosed from recovery of the additional compensation.[8]

Plaintiff seeks to defeat the motion for summary judgment upon a claim that issues of fact exist as to material matters. First, it contends that paragraph XIX of the lease/option agreement is ambiguous as to whether the exercise of the option prior to the expiration of the eighteen-month period is a condition precedent to Transport's right to recover the additional commission and that, hence, summary judgment cannot be granted. This claim is wholly without merit. The contract explicitly provides that the additional payment is due only "in the event the property is purchased by the tenant as provided herein." No clearer language is required.[9] The language with respect to the payment of the commission is unambiguous and parol evidence that attempts to vary its terms is inadmissible.[10]

Transport next argues that, because it was not denominated as a "party" to, and did not expressly consent to, the lease/option agreement, it is bound neither by para-

7. Ettenberg Dep. 22.

8. *See* Restatement (2d) of Contracts § 225(2) (1981) ("Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.").

9. *See Chirchella v. Erwin,* 270 Md. 178, 182, 310 A.2d 555, 557 (1973); *Baltimore County v. Archway Motors, Inc.,* 35 Md.App. 158, 162–163, 370 A.2d 113, 115–116 (1977); Restatement (2d) of Contracts § 226, Comment a, Illustration 1 (1981).

10. *See Creamer v. Helferstay,* 294 Md. 107, 126, 448 A.2d 332, 341 (1982) (*quoting Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y.1911), *aff'd,* 201 F. 664 (2d Cir.1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913); *Ray v. William G. Eurice & Bros.,* 201 Md. 115, 125–27, 93 A.2d 272, 278 (1952) (same); *cf. Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 461, 141 N.E.2d 590, 593, 161 N.Y.S.2d 90, 93 (1957) (New York rule).

graph XIX, quoted above, nor by the integration clause, paragraph XXIV, stating that "[t]his agreement constitutes the entire understanding between the parties ...." The claim that Transport is not bound by the commission provision of the agreement is patently specious. Transport seeks to overcome the force of Ettenberg's signature on the lease/option agreement and his deposition testimony that he agreed to the terms of paragraph XIX by his purported explanation that he signed the lease/option agreement only to "verify [that] I was the broker on the deal." [11] Clearly there was no need for verification that Transport was the broker. The fact is that paragraph XIX itself specified that Transport was the broker and the terms of its compensation; it expressly stated that the parties "agree that Transport Properties, a real estate broker[,] ... was the agent for the Landlord in obtaining the lease and purchase option" and went on to specify the amount to be paid to Transport upon the execution of the lease/option agreement and, "[i]n the event the property is purchased by the [t]enant as provided herein," the amount of the additional compensation: six percent of the option price. Thus, no verification that Transport was the broker was required. On their face the terms of paragraph XIX were included for the principal benefit of Transport and to protect its right to the payment of both its commission with respect to the lease and the additional commission upon a sale pursuant to the exercise of the option.[12]

■ Even assuming, however, that there is a genuinely disputed fact issue as to whether Transport is bound by the lease/option agreement, that issue is not material because the documents Transport *does* rely on to sustain its claim to an additional commission unequivocally reveal a "special agreement" that, like the lease/option agreement, forecloses Transport's recovery here. Transport nowhere in its papers identifies a written document executed by both Transport and Treadco that obligates Treadco to pay a separate commission on a sale to Red Star in 1981. Instead, it relies solely upon the January 3, 1979 letter agreement, executed by representatives of Transport and Treadco, and upon the language of Ettenberg's January 29, 1983, letter to May.[13] Reasonably interpreted in Transport's favor, these documents have the same effect as the lease/agreement: they bar Transport from recovery.

The January 3 letter agreement makes no provision for commissions on "transaction[s] ... consum[m]ated" after the expiration of the initial ninety-day period and the additional four-month period, to wit, August 1979; it expressly provides for the payment of commissions only on transactions completed before that date. Accordingly, under the January 3 letter agreement, the "consum[m]ation of a transaction" prior to August 1979 was a condition precedent to any payment to Transport for bringing about that transaction.[14] The March 1981 sale is beyond the terms of the condition and thus Transport could not recover in the absence of some modification of the terms of the January 3 letter agreement.

■ The January 29 letter, signed by only Ettenberg, sets forth the terms of the proposed lease/option contract and payment of plaintiff's commission, which were later the subject of the agreement entered into on March 6, 1979. In pertinent part, the January 29 letter states:

11. Ettenberg Dep. 22.

12. As noted, *infra*, there is not a single document signed by Treadco, other than the lease/option agreement, binding Treadco to pay a commission on a sale of the trucking facility to Red Star after August 1979. In addition, as is discussed in more detail, *infra*, given the terms of the January 3, 1979, letter agreement, Trans-

port would not be able to avail itself of the Maryland "procuring cause" rule.

13. The operative language quoted from the January 29, 1979, letter, is identical to that from a January 16, 1979, letter from Ettenberg to May, upon which Transport also relies.

14. *See* cases cited *supra* note 9.

This letter will confirm our conversation wherein you have agreed to a lease/purchase option transaction with Red Star Express ... for the truck terminal property you own at 5495 Levering Avenue, Baltimore, Maryland.

. . . . .

Red Star shall have the option to purchase the premises during the first eighteen months of this lease for the sum of $575,000.00 cash.

. . . . .

In the event of a transaction a real estate commission shall be due and payable by [Treadco] to Transport Properties. Said commission shall be calculated at six percent (6%) of the total net lease payments, payable upon the signing of the lease agreements. In the event the property is purchased, an additional commission of six percent (6%) of the sale price shall be due and payable upon the option being exercised, less commissions received for any unexpired portion of the lease.

Even assuming the January 29 letter indicates a modification of the original January 3 letter agreement, it does not refute defendants' claim that exercise of the option was a condition precedent to Treadco's obligation to pay a commission beyond that on the total net lease payments. Although Transport argues that the words "due and payable upon the option being exercised"

were intended to denote the time payment would be made, not when the right to a sales commission arose, this contention rests upon a tortured interpretation of Ettenberg's statement. As the Maryland Court of Appeals held in construing similar language, "[i]f the commission is not *due* until [the happening of an event] and not *payable* until then, the right to it clearly does not accrue until [the specified event occurs.]" [15] Neither the January 29 letter, nor Ettenberg's deposition testimony, in which he purports to interpret its language, raises a genuine dispute of material fact.[16] To the contrary, they confirm that, even if Transport was not a party bound by the lease/option agreement, it nevertheless is not entitled to a real estate commission on the 1981 sale of the trucking facility.

Nor is Transport's position supported by any conduct of the defendants. Transport asserts that a genuine dispute over a material fact issue is raised by Treadco's communication to its attorneys, prior to execution of the contract of sale with Red Star, for the purpose of determining whether, in the event of a sale, Treadco would become obligated to pay a further commission to Transport. Whatever motivated Treadco to seek the advice of its lawyers, however, is irrelevant where, as here, the agreement clearly foreclosed Transport from further

---

15. *Berman v. Hall*, 275 Md. 434, 438, 340 A.2d 251, 253 (1975); *see DeFranceaux Realty Group, Inc. v. Leeth*, 283 Md. 611, 617, 391 A.2d 1209, 1212 (1978) (*quoting Berman*); *Storch v. Ricker*, 57 Md.App. 683, 698–699, 471 A.2d 1079, 1086–87 (1984) (same); *Davis v. Phase I, Ltd.*, 30 Md.App. 691, 701, 354 A.2d 473, 480 (1976) (same).

16. That Ettenberg testified that "a commission is due Transport Properties regardless of whether this option is exercised at all," Ettenberg Dep. 37, does not give rise to a disputed issue of material fact. Just as "[a] party to an action cannot push the other party out of court by swearing he has no case," *Belanger v. Hopeman Bros.*, 6 F.R.D. 459, 461 (D.Me.1947), neither may a party force his opponent to endure the expense of a trial by swearing that he is entitled to relief, or even that his position on a material issue is meritorious.

Ettenberg also testified that "I wouldn't design or enter into an agreement that would allow an

18-month agreement which if somebody decided, the Red Star decided to purchase ... one day after 18 months then I wouldn't get paid anything." Ettenberg Dep. at 52. This may be so, but it is not material to the instant controversy. First, Ettenberg's company was paid— $7,416.00—for negotiating the lease/option agreement. Second, whatever Ettenberg's subjective intent, it is the contract of the parties that governs Transport's contractual obligations and rights. *See* cases cited *supra* note 10. Although "[i]n resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture," Restatement (2d) of Contracts § 227(1) (1981), the opposite holds true where "the circumstances indicate that [the obligee] has assumed the risk," *id.; see id.*, Comment b, Illustration 4.

recovery.[17] A lawyer's opinion is not a substitute for the parties' agreement. Indeed, whatever the opinion of Treadco's attorneys, if another lawyer had a different opinion, obviously it would not be binding on defendants or the plaintiff. Similarly, there is no support in the record for Transport's claim that Treadco excused the performance of the condition upon Transport's right to an additional commission. Although Treadco's vice-president, May, testified he construed Treadco's obligation as requiring payment of a separate commission to Transport on a sale of the property to Red Star for less than $610,000.00 if that sale were consummated within the time specified in the January 3, 1979, letter agreement—that is, by August 1979[18]—this has no bearing on whether Treadco agreed to pay a separate commission on a 1981 sale, the issue in the instant dispute.

There being no issue of material fact that requires a trial, summary judgment is granted in favor of defendants on plaintiff's breach of contract claim. Upon the argument of this motion, plaintiff's counsel conceded that there was no evidence to support the charge that Red Star and Treadco conspired to deprive Transport of a sales commission. The record sustains no other position on the issue, and, accordingly, summary judgment is granted in defendants' favor on the conspiracy count as well.

So ordered.

---

17. Indeed, ascribing significance to a communication with counsel would deny "the necessity ... of the aid of persons having knowledge of the law and skilled in its practice ...." *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888), *quoted, Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

18. May Dep. 35.